DANIEL L. RAINEY, JR., a Minor, By and Through His Father and Next Friend, Daniel L. Rainey, Sr., *et al.*, Plaintiffs-Appellants, v. STANLEY J. PITERA, JR., a Minor, By and Through His Father and Next Friend, Stanley J. Pitera, Sr., *et al.*, Defendants (Stanley J. Pitera, Sr., Defendant-Appellee).

First District (5th Division)   No. 1—93—4059

Opinion filed June 9, 1995.

James F. Driscoll, P.C., of Schaumburg, for appellants.

Ryan & Ryan, Ltd., of Waukegan (Philip J. Ryan, of counsel), for appellee.

JUSTICE COUSINS delivered the opinion of the court:

The plaintiffs, Daniel L. Rainey, Jr., and Daniel L. Rainey, Sr., filed a complaint which included three counts against the defendant, Stanley J. Pitera, Sr. Rainey Jr. was a passenger on defendant's motorcycle when defendant's son drove the motorcycle and had an accident. The plaintiffs' complaint alleged two counts against the defendant for negligent entrustment of the motorcycle and one count of negligence stemming from social host liability. The defendant moved for summary judgment on all three counts pursuant to section 2—1005 of the Code of Civil Procedure (735 ILCS 5/2—1005 (West 1992)), arguing that he had not entrusted his motorcycle to his son or abetted his alcohol use. The trial court granted summary judgment to the defendant on all counts, from which the plaintiffs now appeal.

We affirm.

BACKGROUND

On March 14, 1990, Rainey Jr. was a passenger on defendant's motorcycle as it was driven by defendant's son, Stanley J. Pitera, Jr. As it was turning, the motorcycle was struck by an automobile. Rainey Jr. suffered a brain stem injury in the accident.

Plaintiffs filed their third amended complaint on October 22, 1991. Counts II, VIII, and XIII were directed against the defendant. Counts II and VIII both alleged negligent entrustment by the defendant in allowing his son to use the motorcycle, with the counts differing only in the relief prayed for. Count XIII sounded in social host liability, alleging negligence by the defendant in allowing his minor son access to alcohol.

Defendant filed his first amended motion for summary judgment as to counts II, VIII, and XIII on July 26, 1993. Defendant's motion

set out the following facts about the accident, supported by depositions.

Prior to allowing his son to drive the motorcycle, defendant registered his son for a class in motorcycle safety at Northern Illinois University. The son completed the class prior to getting his motorcycle driver's license. Defendant gave his son keys to the motorcycle, but established four rules for its use: the son had to get prior permission from defendant, he had to wear a helmet, he could not use the motorcycle with a passenger on back, and he could only use the motorcycle in good weather. Before the accident, the son had never violated any of these rules.

On the day of the accident, March 14, 1990, defendant was at work from noon until 8 p.m. At around 6 p.m. that day, defendant's son called defendant to ask permission to drive the motorcycle to a skating rink. Defendant gave his permission, telling his son, "Just go to the roller rink, show everybody and come right home with it."

At the rink, defendant's son met Rainey Jr. They went back to defendant's house at 6:30 p.m. At defendant's house they took a bottle of scotch out of a cabinet and made some drinks.

At 8 p.m. defendant's son, without permission, started driving the motorcycle with Rainey Jr. as a passenger. They were driving to Rainey Jr.'s girlfriend's house. A car struck the motorcycle while it was turning at 8:15 p.m. A blood-alcohol test was performed on defendant's son at the hospital, and the test revealed a trace of alcohol, "less than the amount from taking a dose of cough syrup" according to the technician.

Defendant argued that these facts established that no negligent entrustment took place because either (1) there was no entrustment; or (2) defendant had no knowledge of any alleged incompetence in his son's driving; or (3) defendant's son was not an incompetent driver. Defendant also argued that the social host liability count did not state a legally recognizable claim and that defendant had not abetted his son's alcohol use. The plaintiffs did not dispute the defendant's facts, and the trial court heard oral argument on the motion on October 7, 1993. The court agreed with all three of defendant's contentions as to the negligent entrustment counts, as well as defendant's arguments as to the nonexistence of a claim for social host liability. The court granted the summary judgment motion as to counts II, VIII, and XIII on October 7, 1993, from which the plaintiffs appeal.

OPINION

I

In summary judgment cases, we conduct a *de novo* review. (*In re*

*Estate of Hoover* (1993), 155 Ill. 2d 402, 411, 615 N.E.2d 736.) If the court finds that the record contains any material issues of genuine fact, the motion for summary judgment must be denied. (*Hoover*, 155 Ill. 2d at 411.) Although the use of summary judgment aids in the expeditious disposition of a lawsuit, it is a drastic means of disposing of litigation. (*Hoover*, 155 Ill. 2d at 410.) Summary judgment is, therefore, proper only when the resolution of a case hinges on a question of law and the moving party's right to judgment is clear and free from doubt. *Hoover*, 155 Ill. 2d at 410.

■ As to counts II and VIII for negligent entrustment, we find that the facts demonstrate a total lack of any permission or knowledge on the part of the defendant. A person may be liable for negligent entrustment of a vehicle where that person entrusts the vehicle to one whose incompetency, inexperience, or recklessness is known or should have been known by the entrustor of the vehicle. (*Bishop v. Morich* (1993), 250 Ill. App. 3d 366, 369, 621 N.E.2d 43; *Johnson v. Ortiz* (1993), 244 Ill. App. 3d 384, 387, 614 N.E.2d 408.) Entrustment can be shown through the giving of express or implied permission. (*Bishop*, 250 Ill. App. 3d at 369; *Kosrow v. Acker* (1989), 188 Ill. App. 3d 778, 784, 544 N.E.2d 804.) The parties in this case do not dispute that the defendant did not give his son express permission to use the motorcycle.

We also believe there is no issue of material fact that the defendant did not give implied permission to his son in the instant case. Implied permission exists when a course of conduct or relationship between the parties includes a mutual acquiescence or lack of objection under circumstances signifying permission. (*Bishop*, 250 Ill. App. 3d at 369; *Johnson*, 244 Ill. App. 3d at 387.) The defendant had never allowed his son to drive previously without permission. The son even called earlier on the day of the accident to obtain express permission, demonstrating that the necessity of express permission was still the standard course of conduct between the parties. No evidence exists of any previous mutual acquiescence or lack of objection, and we find the evidence is overwhelming to the contrary.

The plaintiffs argue that the defendant's act of providing keys to his son for the motorcycle was enough to create a factual question as to implied permission. We disagree, as this court has repeatedly held that making keys available does not alone create implied permission. In *Bishop*, the defendant's daughter had taken keys from a shelf in the kitchen before driving without permission. She had previously taken the keys from the shelf, with permission, to warm up the car on cold mornings or to back out the car for washing it. This court held:

"This is not a case where Elizabeth had previously been given express permission to drive the car on the streets, or where the Moriches knew she would drive and failed to object. \*\*\* [U]nder the circumstances of this case, *leaving car keys where a teenager can get them does not imply permission to use them.*" (Emphasis added.) (*Bishop*, 250 Ill. App. 3d at 369-70.)

Likewise, in the instant matter, there was no express permission, nor had there ever been a failure to object to an unpermitted drive.

In *Johnson*, that driver took car keys without permission from the defendant's purse. The driver had used defendant's car 10 to 15 times before, but always with express permission. This court stated, "[T]here was no evidence that there was a *regular* practice of allowing the unauthorized driver to use the car. \*\*\* [The driver] was always required to get defendant's express permission to use her car." (Emphasis in original.) (*Johnson*, 244 Ill. App. 3d at 387.) Thus, even though the *Johnson* plaintiff argued that this driver lived with defendant and knew where she kept her keys, we held, "Even when we view the above inferences most liberally in favor of plaintiff, they do not amount to evidence of mutual acquiescence or lack of objection as required for there to be implied consent." *Johnson*, 244 Ill. App. 3d at 387.

Lastly, *Kosrow* was another case similar to the instant matter. The *Kosrow* defendant had let the driver use the car two times previously, but the court stated, "There is no other evidence which establishes that these isolated instances were reflective of a regular practice in which defendant allowed [the driver] to use his car." (*Kosrow*, 188 Ill. App. 3d at 785.) The defendant had also left his keys on his bedroom dresser, a bedroom where the driver had sometimes slept, but *Kosrow* held that this was insufficient to create a factual question as to implied permission. *Kosrow*, 188 Ill. App. 3d at 785-86.

The plaintiffs first rely on *Pelczynski v. J.W. Peters & Sons, Inc.* (1989), 178 Ill. App. 3d 882, 533 N.E.2d 1137, but that case does not contradict the trial court's ruling. In *Pelczynski*, the defendant company had rented a car for an employee with a poor driving record. The defendant instructed the employee to use the car only for travel to his jobsite and not for personal business, but the employee had an accident while violating this directive. The trial court granted summary judgment in favor of the defendant, holding that the employee was acting outside the scope of his permission to use the car. *Pelczynski* reversed, stating, "Whether [the employee] was acting within the scope of defendant's consent is not an element of proof in a negligent entrustment case." (*Pelczynski*, 178 Ill. App. 3d at 886.) *Pelczynski* held, sensibly enough, that an entrustor is liable for

permitting a poor driver to use the entrustor's vehicle notwithstanding any directions given to the incompetent driver. However, *Pelczynski* did not remove the requirement that the driver must obtain initial permission to establish the act of entrustment. (*Pelczynski*, 178 Ill. App. 3d at 885 ("duty upon the owner to deny permission").) Thus, *Pelczynski* is inapposite to the instant case, where the existence of permission is at issue, not its scope.

The plaintiffs also rely on the fifth district case of *Taitt v. Robinson* (1994), 266 Ill. App. 3d 130, 639 N.E.2d 893, in which a father had left his keys in his truck's ignition at all times. To the extent that *Taitt* holds that the act of leaving keys available must necessarily create a factual question as to implied permission, *Taitt* is inconsistent with this court's holdings in *Bishop* and *Johnson*. *Taitt* relied on *Donnelly v. Baltz* (1976), 43 Ill. App. 3d 106, 356 N.E.2d 1163, where an owner sued a repair business after his car was *stolen*. The *Donnelly* owner asked that his keys be left on the visor after repairs were completed, and *Donnelly* held that the owner's negligence barred *his own* recovery. (*Donnelly*, 43 Ill. App. 3d at 108.) Unlike *Taitt*, we do not see how *Donnelly* has any bearing on the issue of implied permission. We believe the dissent in *Taitt* accurately summarizes the previous holdings of this court. See *Taitt*, 266 Ill. App. 3d at 134-35 (Rarick, J., concurring in part & dissenting in part).

■ In addition, even if the defendant had entrusted the motorcycle, we believe there is no issue of material fact as to the defendant's lack of knowledge of his son's incompetency to use the motorcycle. Negligent entrustment consists of entrusting a dangerous article to another whom the lender knows, or should know, is likely to use it in a manner involving an unreasonable risk of harm to others. (*Zedella v. Gibson* (1995), 165 Ill. 2d 181, 186; *Teter v. Clemens* (1986), 112 Ill. 2d 252, 257, 492 N.E.2d 1340.) The plaintiffs admitted in oral argument that defendant's son was a competent driver when not carrying passengers.

Even assuming *arguendo* that the son was unfit to carry passengers, there is no evidence that defendant knew, or should have known, that his son was likely to carry passengers. All of the evidence is to the contrary, in that the defendant's son had always previously followed defendant's instructions. As an analogy, it would not be negligent to entrust a vehicle to one who needs glasses to drive safely, as long as the entrustor had no knowledge of any previous occasions where that person had driven without glasses. (See *Bensman v. Reed* (1939), 299 Ill. App. 531, 536, 20 N.E.2d 910.) The cases cited by the plaintiffs consider a previously *exposed* incompetency and thus are inapposite to the instant matter. (See *Malorney v.*

*B&L Motor Freight, Inc.* (1986), 146 Ill. App. 3d 265, 496 N.E.2d 1086 (owner had duty to deny use of vehicle by employee *after* his assaults on hitchhikers).) The defendant gave his motorcycle to a competent driver, and because defendant had no knowledge or reason to know his son would take passengers, the defendant did not negligently entrust his vehicle.

## II

As to count XIII based on social host liability, the Illinois Supreme Court recently held that no such cause of action exists in this State. *Charles v. Seigfried* (1995), 165 Ill. 2d 482.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

GORDON and McNULTY, JJ., concur.