FONZY WATSON, Special Adm'r of the Estate of Latonia Fleming, Deceased, and Unborn Baby Fleming, Plaintiff-Appellant, v. ENTERPRISE LEASING COMPANY, Defendant-Appellee (Henry L. Merchant, Defendant).

First District (2nd Division)   No. 1—00—3766

Opinion filed September 18, 2001.—Rehearing denied October 23, 2001.

A. Denison Weaver, Ltd., of Chicago (A. Denison Weaver, of counsel), for appellant.

Murphy & Murphy, of Chicago (Daniel E. Murphy, of counsel), for appellee.

JUSTICE BURKE delivered the opinion of the court:

Plaintiff Fonzy Watson, special administrator of the estate of Latonia Fleming, deceased, and unborn Baby Fleming, appeals from an order of the circuit court granting defendant Enterprise Leasing Company's motion to dismiss plaintiff's complaint pursuant to section 2—619 of the Code of Civil Procedure (725 ILCS 5/2—619 (West 1998)).[1] On appeal, plaintiff contends that the trial court erred in granting defendant summary judgment because there was ample evidence creating a material question of fact on the issue of proximate cause; specifically, on the question of foreseeability, that the automobile in which decedent Latonia Fleming was a passenger would be oper-

---

[1]While the defendant labeled its motion a motion to dismiss, the trial court treated it, and the parties agree, as a motion for summary judgment.

ated by someone other than the individual who rented it from defendant. Plaintiff also contends that the trial court erred in denying her request to file a second amended complaint. For the reasons set forth below, we affirm.

## STATEMENT OF FACTS

On June 26, 1998, Milton Pillow, on behalf of Dawn Monroe,[2] rented a car from defendant,[3] through its agent Erika Brown, who knew Dawn's brother Dan Monroe. On July 3, the rental car was taken from Dawn, either with or without permission,[4] by her brother-in-law Arenzo Borden. Later that evening, the car was taken from Borden, with or without permission,[5] by Henry Merchant, a 17-year-old. While driving the car under the influence of alcohol and marijuana and with Latonia Fleming as a passenger, Merchant crossed two lanes of traffic on the expressway and slammed into a wall, killing Fleming.

On July 29, 1998, plaintiff filed a complaint against Enterprise, Merchant, and Borden, alleging negligent entrustment against Enterprise and negligence against Merchant and Borden, contending that Enterprise rented the car to Borden, who allowed Merchant to operate it. On October 6, defendant filed a motion to dismiss, contending that it did not negligently entrust the vehicle to Merchant but, rather, had only entrusted the car to Pillow. On October 15, the trial court entered an order, pursuant to plaintiff's motion, voluntarily dismissing Borden as a defendant and granting plaintiff leave to file an amended complaint. On the same day, plaintiff filed an amended complaint against Enterprise and Merchant, alleging negligent entrustment against Enterprise, in that it leased the vehicle to Pillow, and that Merchant was negligent.

On October 6, 1999, plaintiff filed her response to defendant's motion to dismiss. On November 20, defendant filed its reply, on December 29, plaintiff filed her surresponse, and on January 4, 2000, defendant filed its surreply.

Various deposition testimony was offered in support of and in opposition to defendant's motion. Erika Brown testified that she was the

---

[2]The issue of whether the car was leased to or for Dawn was highly contested.

[3]Although both Enterprise and Merchant are defendants below, because Merchant is not involved in this appeal, we will generally refer to Enterprise as defendant. However, in situations so warranting, the defendants will be identified by name. In addition, procedural facts relevant to plaintiff's claim against Merchant will not be detailed.

[4]This issue was contested.

[5]This issue was contested.

branch manager for defendant's car leasing office located in Worth, Illinois. She knew Dan Monroe because they had worked together. Brown had been trained not to lease a car to anyone under the age of 21, but defendant would rent to an individual who possessed a traffic ticket only if the ticket was valid, *i.e.*, the court date had not yet expired, the individual possessed a picture identification, and the ticket was not for driving under the influence.

Brown further testified that Dan called her in March 1998, stating that his sister Dawn would be calling to rent a car. According to Brown, this call was made so that Dawn could receive the 33% family discount. Brown also stated that she never met Dawn until June 26, 1998, when Dawn walked into the office. Brown further stated that Dawn had not called prior to this time to reserve a car.

On June 26, Dawn came into the Worth office with Milton Pillow. According to Brown, it was her understanding that Dawn was to rent a car. However, when she asked Dawn for her license, Dawn handed her a traffic ticket and state identification card. Because the ticket was old and Dawn was under 21, Brown advised Dawn that she could not rent a car to her. Dawn then asked Pillow to rent the car, which he agreed to do. Brown filled out the contract and included Dan's name as an additional driver. She also wrote in Dan's driver's license number, which she retrieved from a computer. Brown stated that she included Dan as an authorized driver because Dawn said she needed the car to help him move. Brown gave Pillow an employee discount. Both Dawn and Pillow gave her money, after which she went out to the car to write down the mileage and gas level. Brown then gave the keys to the car to Pillow, who drove the car off the lot. Dawn drove the car in which the two had arrived at the Worth office. Brown denied knowing that Dawn was going to subsequently drive the leased car and stated that Dawn advised her that Dan would be driving it. Brown specifically stated that she told both Pillow and Dawn that Dawn was not to drive the car.

Subsequently, Brown received a telephone call from Pillow extending the rental period until July 3. A couple of days after July 3, Brown received a call from a state trooper during which he informed her that the leased car had been in an accident. On July 6, Dan called her, stating that he knew nothing about the rental agreement. Because of this, Brown crossed Dan's name off the contract and took his name out of the computer. When she learned the car had been in an accident, Brown computed the additional charges for the car at the regular price, without the family discount. On July 7, Brown spoke with Dawn, who stated that she borrowed the car from Pillow and that her brother-in-law, who was riding with her, had taken the car from her and left her at a store.

Dawn Monroe testified that Pillow was a friend of her mother's. Dawn possessed an Illinois driver's license but had received a traffic ticket, which she never "followed up on." At the time of her deposition, she did not know the status of her driver's license. She further stated that Borden was her brother-in-law and she did not know Merchant or Fleming.

Dawn also testified that she first met Brown on June 26 but had spoken with her on the telephone prior to that time. She further stated that Dan had told her to call Brown. When Dawn first spoke to Brown at the end of April, she told Brown she wanted to rent four cars because a group of individuals wanted to go to Atlanta to see "Freaknic." Dawn did not rent a car at that time because the group flew to Atlanta. Dawn also stated that, in April, she advised Brown of her age, *i.e.*, that she was 20. Dawn next spoke with Brown approximately one week prior to renting the car in June. Dawn told Brown that she needed to rent a car for approximately one week. Dawn stated that she did not tell Brown that she needed the car to help her brother move and that, at this time, she reminded Brown that she did not have a driver's license and she only had a traffic ticket.

Dawn further testified that on June 26, Pillow drove her to the rental office. Upon arriving there, Dawn again reminded Brown that she did not have a driver's license. Brown stated that that was "okay." After proceeding to the rental counter, Brown told Dawn that she could not rent the car to her, so Dawn asked Pillow to rent the car. Pillow agreed and the paperwork was filled out. Brown advised the two that Dawn could not drive the car off the lot, that Pillow had to do so. Dawn paid Brown $140, after getting $20 from Pillow. According to Dawn, there was never any discussion of whether Dan was to be listed as an additional driver and she denied that Brown stated that she could not drive the car; Brown only stated that Dawn could not drive the car off the lot. Dawn also stated that she specifically told Brown that she would be driving the car and also told her that, if she needed the car for a longer period of time, she would call Brown and let her know.

Dawn further stated that after she and Pillow left the rental lot, they proceeded to a cash station where she retrieved the money she owed Pillow. Dawn then drove the rental car and Pillow drove his own car. Subsequently, Dawn had Pillow call and extend the rental period. She had Pillow call because she was on her "way out" and did not have time to call.

Dawn also stated that on Friday, July 3, she and Borden went to a store and, while she was in the store, Borden took the car from her

and drove off, leaving her stranded. Dawn denied giving Borden permission to drive the car. Dawn did not report the car stolen because she believed Borden would return with it soon.

On cross-examination, Dawn testified that Brown advised her she could not rent the car to her because another person was in the office at the time.

Milton Pillow testified that it was his understanding, when he took Dawn to the car rental office, that she would sign for the car. However, when they began the process, Brown advised Dawn she could not rent to her because she had a ticket. Pillow denied that Brown stated it was because Dawn was under 21 years old. Pillow did not recall Dan ever being mentioned when he signed the contract, and he believed that Dawn would be the primary driver. Pillow signed the contract only as a favor. Pillow denied Brown ever stated that Dawn could not drive the car, although she did indicate that Pillow had to drive the car off the lot. When Pillow saw "Dan's" name on the contract, he assumed it meant Dawn.

Arenzo Borden testified that he never possessed a valid driver's license. He knew both Dawn and Merchant. On July 3, Borden drove Dawn to a store, at her request, in the rental car. En route, he picked up a friend. Because the friend was drunk, Borden intended to take him home. While driving to the friend's house, Dawn saw another friend driving by. According to Borden, Dawn jumped out of the car, got into the friend's car, and left with him. Rather than taking his friend home, Borden decided to stop by his brother's house. After speaking to his brother, Borden began talking to Merchant and Fleming, who invited him into Merchant's apartment. There were others already present in the apartment, drinking. Borden remained at the apartment with the group, drinking and smoking marijuana. Approximately 2½ hours later, "Pumpkin" came down and asked Borden to drive her to a restaurant and then to her boyfriend's home. The group talked for approximately one-half hour and then Borden, "Heath," Merchant, and Pumpkin left. After stopping at a sub shop, Borden dropped Pumpkin off and then went to a liquor store. Merchant and Borden went into the store, while Heath remained in the car because he was too drunk to walk. En route back to Merchant's apartment, Borden dropped Heath off. Borden and Merchant returned to the apartment, where the other ladies had remained, and the group resumed drinking and smoking marijuana.

At some point in the late evening, Borden used the rest room. Before doing so, he removed his key chain from his neck, which contained the key to the rental car, and put it in his hat. He then placed the hat on top of a speaker or radio. When he came out of the

bathroom, Merchant and Fleming were gone. The group told him they had gone to a restaurant. At this time, Borden noticed that his hat was on the floor and his keys were gone. Borden was mad and upset when he learned Merchant had taken the car because it was not his and Dawn did not know these people so she would not have given Merchant permission to drive the car.

On cross-examination, Borden stated that when the group first went out that day, he had allowed Merchant to drive the car through a park.

Katrice Merchant, Merchant's cousin, was among the group of people at the apartment on July 3. She stated that Fleming was hungry and asked Borden to take her to a restaurant. At this time, Merchant stated that he would drive her. While Borden was giving Merchant the keys, Katrice attempted to grab them, stating she would drive Fleming because Merchant and Borden were too drunk to drive. Merchant took the keys in any event. Katrice denied that Merchant stole the keys and reiterated that Borden put the keys in Merchant's hand.

Henry Merchant testified that Borden had given him the keys to the car so that he and Fleming could go to a restaurant. According to Merchant, he asked Borden 15 times to take them, but Borden refused. Katrice then volunteered to take them, but she was refused. Merchant admitted that he was intoxicated but stated that he was capable of walking, seeing, and driving a car. Merchant also admitted that, prior to this time, the group had been drinking and smoking marijuana. Merchant and Fleming went to a restaurant, got food, went to a store to buy liquor and cigars, and then intended to go to his house and "chill" for awhile. The last thing he remembered was getting on the expressway ramp—he blanked out as they entered it. Thereafter he remembered waking up in the hospital. Merchant did not know that the car was a rental and stated that Borden told him it was his. Merchant never had a driver's license and learned to drive by stealing cars as a juvenile. Merchant denied that he took the keys.

On February 18, the trial court dismissed plaintiff's amended complaint with prejudice. At the hearing, the court stated that, even assuming plaintiff alleged that defendant entrusted the vehicle to Dawn, which it did not believe plaintiff had done, and that Dawn was incompetent, it was not Dawn's incompetence that was a proximate cause of the accident since Merchant was driving under the influence, which was the proximate cause of the accident.

On February 24, defendant filed a motion for a Rule 304(a) (134 Ill. 2d R. 304(a)) finding and, on February 28, plaintiff filed a motion for "rehearing" and a motion for leave to file a second amended complaint. On May 25, the trial court denied plaintiff's motion for rehear-

ing and her motion for leave to amend her complaint. At this hearing, plaintiff indicated that, at the hearing on February 18, the court indicated that it had a doubt whether plaintiff's complaint alleged a connection between Enterprise and Dawn and she contended that the amended complaint remedied that concern. The court then indicated that the question was whether the second amended complaint cured the defect. The court concluded that the second amended complaint did not cure the defect, finding that the complaint alleged negligent entrustment to Dawn but that this had no effect on the court's prior dismissal of plaintiff's first amended complaint because the court found that, even if plaintiff alleged negligent entrustment to Dawn, Dawn's incompetency was not the proximate cause of the accident— Merchant's intoxication was. On October 19, an agreed order was entered, granting defendant's motion to add Rule 304(a) language to the court's February 18 order. This appeal followed.

## ANALYSIS

■ A motion for summary judgment is properly granted when the pleadings, depositions, admissions, and affidavits on file establish that no genuine issue as to any material fact exists and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 1998); *Cramer v. Insurance Exchange Agency*, 174 Ill. 2d 513, 530, 675 N.E.2d 897 (1996). We review the trial court's granting of such a motion *de novo*. *McNamee v. State of Illinois*, 173 Ill. 2d 433, 438, 672 N.E.2d 1159 (1996).

■■ Section 390 of Restatement (Second) of Torts provides:

"One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them." Restatement (Second) of Torts § 390, at 314 (1965).

This principle is known as negligent entrustment. With respect to automobiles, a person may be liable for the negligent entrustment of a vehicle "where that person entrusts the vehicle to one whose incompetency, inexperience, or recklessness is known or should have been known by the entrustor of the vehicle." *Rainey v. Pitera*, 273 Ill. App. 3d 234, 237, 651 N.E.2d 747 (1995). There are two primary considerations in a negligent entrustment action: "(1) whether the owner entrusted his car to an incompetent or unfit driver, and (2) whether the incompetency was a proximate cause of the accident." *Taitt v. Robinson*, 266 Ill. App. 3d 130, 132, 639 N.E.2d 893 (1994).

Entrustment may be given by either express or implied permission. *Rainey*, 273 Ill. App. 3d at 237. "Implied permission exists when a course of conduct or relationship between the parties includes a mutual acquiescence or lack of objection under circumstances signifying permission" or the giving of consent. *Rainey*, 273 Ill. App. 3d at 237.

■ The issue of proximate cause is generally a question for the trier of fact. *First Springfield Bank & Trust v. Galman*, 188 Ill. 2d 252, 257, 720 N.E.2d 1068 (1999). In negligent entrustment actions, the alleged incompetence of the driver must be a proximate cause of the negligent act that caused the injury (*King v. Petefish*, 185 Ill. App. 3d 630, 634, 541 N.E.2d 847 (1989)), and the entrustor is liable, but only if his conduct is the legal cause of the complained-of bodily harm. Restatement (Second) of Torts § 390, Comment *c*, at 316.

■ Proximate cause consists of two distinct requirements: cause in fact and legal cause. *First Springfield Bank & Trust*, 188 Ill. 2d at 257-58. As stated in *First Springfield Bank & Trust*:

"Cause in fact exists where there is a reasonable certainty that a defendant's acts caused the injury or damage. [Citation.] A defendant's conduct is a cause in fact of the plaintiff's injury only if that conduct is a material element and a substantial factor in bringing about the injury. [Citation.] A defendant's conduct is a material element and a substantial factor in bringing about an injury if, absent that conduct, the injury would not have occurred. [Citation.] 'Legal cause,' by contrast, is essentially a question of foreseeability. [Citation.] The relevant inquiry here is whether the injury is of a type that a reasonable person would see as a likely result of his or her conduct." *First Springfield Bank & Trust*, 188 Ill. 2d at 258.

The supreme court has further provided:

"[I]f the negligence charged does nothing more than furnish a condition by which the injury is made possible, and that condition causes an injury by the subsequent, independent act of a third person, the creation of the condition is not the proximate cause of the injury. [Citations.] The test that should be applied in all proximate cause cases is whether the first wrongdoer reasonably might have anticipated the intervening efficient cause as a natural and probable result of the first party's own negligence." *First Springfield Bank & Trust*, 188 Ill. 2d at 257.

In other words:

"The only time an entrustee's act of negligent entrustment cannot be considered part of the proximate cause of the injury is when the causal chain has been broken by a superseding, intervening force. [Citation.] Whether or not an intervening or superseding

cause is sufficient to cut off the proximate cause of a defendant's act of negligence in Illinois depends on if the defendant could reasonably foresee the intervening act. [Citation.] In order to escape liability, the defendant must demonstrate the intervening act was unforeseeable as a matter of law." *King*, 185 Ill. App. 3d at 640. If the defendant's conduct is so remote from the events leading to a plaintiff's injury that it can be said, as a matter of law, such conduct was not a contributing legal cause, the defendant is not liable. *King*, 185 Ill. App. 3d at 641.

Plaintiff contends that there is ample evidence to raise a question of fact on the issue of foreseeability that the vehicle would be operated by someone other than Dawn. According to plaintiff, the trial court necessarily, pursuant to its ruling, found that it was not reasonably foreseeable, as a matter of law, that Dawn would allow someone else to drive the car. Plaintiff argues that there is ample evidence to allow a fact finder to conclude that defendant knew or should have known that the car could be operated by an unauthorized driver. According to plaintiff, defendant admits as much in paragraphs 5 and 13 of its contract.[6] Plaintiff also argues that the negligence of defendant in entrusting the car to Dawn set in motion one of the conditions that caused the accident and, when combined with the negligence of Merchant, who was a foreseeable user, caused the accident.

Defendant contends that plaintiff has failed to address each of the elements of a cause of action for negligent entrustment in her complaint. First, the complaint failed to allege that defendant entrusted the vehicle to Merchant or Borden and failed to allege that defendant knew or should have known that Merchant or Borden was an unfit or incompetent driver. Additionally, defendant argues that there is no factual nexus between itself and Merchant. Defendant also "vehemently" denies that it entrusted the vehicle to Dawn. According to defendant, it did not entrust the car to a group of people; rather, it entrusted the car to Pillow. Ultimately, defendant contends that it was not reasonably foreseeable that Pillow would allow Dawn to operate

---

[6]Paragraph 5 of the contract stated:

"For rental agreements executed in Illinois, 'damage waiver' may be voided for one or more of the following reasons: *** (7) damage or loss occurring while the rental vehicle is operated by a driver not permitted under the rental agreement."

Paragraph 13 provided:

"Violations of the contract: *** [A] violation of the contract shall exist if the car is used or driven *** (b) by any person under the age of 25 without owner's written permission *** [and] (e) by any person other than renter without written consent of owner."

the vehicle, that Borden would take the vehicle from Dawn, and that Merchant would take the vehicle from Borden and operate it while under the influence of alcohol and drugs—a criminal act.

Plaintiff responds that the crucial issue here is foreseeability, which defendant ignores. Plaintiff argues that there was a material question of fact for the jury because defendant warned against the use of the car by an unauthorized driver and, therefore, it was aware that an unauthorized driver could operate the car. Ultimately, plaintiff argues that the issue is whether defendant, when it entrusted the car to Dawn, knew or should have known that the vehicle could be involved in an accident caused by the negligence of the entrustee or some other driver.

Initially, despite the fact that the contract clearly was between defendant and Pillow, there is a question of fact whether defendant entrusted the car to Dawn. Portions of Brown's deposition testimony could support such a conclusion. Additionally, the circumstances surrounding the rental and Brown's conduct after the accident are certainly questionable. As such, one could not say, as a matter of law, that defendant did not impliedly acquiesce and give permission to Dawn to use the vehicle. Nonetheless, the issue is irrelevant based on our resolution of the proximate cause issue.

We agree that the element of cause in fact of a negligent entrustment claim has been satisfied. As plaintiff contends, but for defendant's negligent entrustment, the car would not have been on the road and the accident would not have happened. All cause in fact requires is, "absent [defendant's] conduct, the injury would not have occurred." *First Springfield Bank & Trust*, 188 Ill. 2d at 258. Clearly, absent defendant renting this car to either Pillow or Dawn, the accident would not have occurred.

■ The crux of the issue in this case, however, is legal cause, which revolves around foreseeability. We agree with plaintiff, based on paragraphs 5 and 13 of defendant's contract, that it would be reasonably foreseeable that a rental car may be driven by an unauthorized driver. This is particularly true in the instant case because if one believes that Brown knew Dawn would be driving the car, defendant would know that an unauthorized driver would be operating it since Dawn was listed nowhere on the contract. If, assuming Brown, and therefore defendant, knew Dawn would drive the car and Dawn caused the accident, this would be sufficient to avoid summary judgment. However, Dawn was not operating the vehicle and did not cause the accident.

Here, the vehicle was taken from Dawn, either with or without permission, by Borden and then taken from Borden, either with or

without permission, by Merchant. Merchant, who was 17 years old, then drove the car after drinking and smoking marijuana all day long. The "entrustment" in this case is, at least, two times removed. Additionally, the accident occurred due to a criminal act—Merchant driving while under the influence. See *Alamo Rent-A-Car, Inc. v. Hamilton*, 216 Ga. App. 659, 660, 455 S.E.2d 366, 368 (1995) ("[a]ny negligence on Alamo's part *** was superseded here by the unauthorized criminal acts of [the unauthorized driver]"). To impose foresight on defendant under the particular circumstances present in this case would render it liable for anyone who drove the car, thus making it strictly liable. It is not reasonably foreseeable, assuming the car was entrusted to Dawn, that the car would be taken from her by another and then taken by another who then engaged in criminal conduct, nor is it reasonable to conclude that this is the purpose or intent of the negligent entrustment doctrine. While it is true that defendant furnished a condition, by renting the car, and the condition caused injury by the subsequent, independent act of Merchant, the creation of the condition by defendant is not the proximate cause of plaintiff's injuries. Defendant's negligent entrustment, if any, was so remote that, as a matter of law, such conduct was not a contributing legal cause of plaintiff's injuries. Accordingly, we find that the trial court properly entered summary judgment in favor of defendant.

▇ In addition, because plaintiff could never plead sufficient allegations to establish that defendant's conduct was a proximate cause of the accident, the trial court did not abuse its discretion in denying plaintiff's motion to amend the complaint.

## CONCLUSION

For the reasons stated, we affirm the judgment of the circuit court of Cook County.

Affirmed.

CERDA and WOLFSON, JJ., concur.