NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 250220-U

NO. 4-25-0220

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
November 26, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| CHANCE DICKS, Individually; KATIE DICKS, Individually; and ADALEIGH DICKS, a Minor By and Through Her Parents and Next Friends Chance Dicks and Katie Dicks, | ) ) ) ) | Appeal from the Circuit Court of Livingston County No. 22L39 |
|      Plaintiffs-Appellants, | ) | |
|      v. | ) | Honorable |
| ANGELISE KUNTZ, a Minor, and JACOB R. KUNTZ, | ) | Randy A. Yedinak, |
|      Defendants-Appellees. | ) | Judge Presiding. |

PRESIDING JUSTICE HARRIS delivered the judgment of the court.
Justices DeArmond and Cavanagh concurred in the judgment.

**ORDER**

¶ 1     *Held*:   The trial court did not err in granting defendant father's motion for summary judgment on plaintiffs' claim that he negligently entrusted his vehicle to his minor daughter.

¶ 2     Following a motor vehicle collision, plaintiffs—Chance and Katie Dicks and their minor child, Adaleigh Dicks—brought a personal injury action against defendants—Angelise Kuntz, a minor, and her father, Jacob R. Kuntz—alleging negligence and negligent entrustment. The trial court granted summary judgment in Jacob's favor on plaintiffs' negligent entrustment claim. Plaintiffs appeal. We affirm.

¶ 3                                              I. BACKGROUND

¶ 4     On September 10, 2022, plaintiffs and Angelise were involved in a motor vehicle collision at a rural intersection in Livingston County, Illinois. At the time of the collision, Angelise was 14 years old and was driving a truck owned by Jacob.

¶ 5    In November 2022, plaintiffs filed their two-count complaint, alleging negligence against Angelise (count I) and negligent entrustment against Jacob (count II). Plaintiffs asserted that at the time of the incident, Angelise, who was too young to possess a valid driver's license, failed to stop at a stop sign and "pulled out into the path of the Plaintiffs' vehicle causing the two vehicles to collide." According to plaintiffs, Angelise negligently failed to (1) maintain a proper lookout for other vehicles, (2) operate her vehicle in a safe manner, (3) maintain reasonable and proper control of her vehicle, (4) yield the right of way to oncoming traffic, and (5) reduce her speed. They alleged that Jacob entrusted his vehicle to Angelise despite knowing or having reason to know that Angelise, "because of youth, inexperience, and/or prior actions[,] was likely to drive the vehicle in a reckless and negligent manner." Plaintiffs further alleged that they were injured as a result of the collision and that the negligence of Angelise and Jacob directly and proximately caused their injuries.

¶ 6    In October 2024, Jacob filed a motion for summary judgment as to plaintiffs' claim against him, alleging they could not meet their evidentiary burden and satisfy all the elements of their negligent entrustment claim. Specifically, Jacob argued plaintiffs were required to show that he entrusted his vehicle, through express or implied permission, to a driver that he knew or should have known was incompetent, inexperienced, or reckless. He maintained, however, that plaintiffs could not establish that on the night of the collision, he entrusted his vehicle to Angelise through either express or implied permission.

¶ 7    To support his contention, Jacob pointed to his and Angelise's discovery depositions. He asserted their deposition testimony showed that on the night of the collision, Jacob was traveling out of state with other family members while Angelise remained home under the supervision of her older, adult brother. He pointed out that Angelise did not ask for permission to

drive his truck on the night of the collision and that deposition testimony showed she (1) had only driven the truck once before "in connection with family farming operations," (2) had never been permitted to drive on public roads, and (3) "had never before done anything *** like what she did on the night of September 10, 2022." Jacob argued it was clear from the factual record that he did not know or have reason to know that Angelise would operate his truck on the night in question. He cited the First District's decision in *Bishop v. Morich*, 250 Ill. App. 3d 366 (1993), arguing it was a factually analogous case where summary judgment was entered in favor of the defendant parents whose 15-year-old daughter was involved in a motor vehicle accident.

¶ 8        Both Jacob's and Angelise's discovery depositions were attached to Jacob's motion for summary judgment. During his deposition, Jacob testified that he lived with his wife and eight children. His family operated a hog farm with different locations. Aside from raising hogs, they also raised corn and soybeans. Jacob's farm had employees, and his children also worked on the farm. Angelise was homeschooled and worked in the farm's feed mill, which was located at a different address than the family's residence. Regarding Angelise's prior driving activities, Jacob and plaintiffs' counsel engaged in the following colloquy:

"Q. How did [Angelise] get to the feed mill?

A. Either she would ride with me or one of my brothers or one of my sons.

Q. Were there occasions when Angelise would drive herself around the farm?

A. She never drove on the road. She would operate some of the vehicles or equipment at the feed mill.

Q. So she never drove between the two properties?

A. No.

Q. So what kind of driving would she do at the feed mill?

A. She would operate the end loader, forklifts, occasionally move vehicles around.

Q. How old was she when she started doing that?

A. Probably 12."

¶ 9 Jacob testified that on the date of the accident, he was traveling to Florida with several of his children to deliver a vehicle to his wife. He explained that his wife was staying in Florida with one of the couple's children, who was receiving medical care in that state. Angelise remained at home, and Jacob asked his adult son, who lived elsewhere, "to come spend the night with her." Jacob testified he instructed Angelise "to work on school and go to bed early" and to meet her grandfather in the hog barn the next morning "to get chores done before church." After the collision, Angelise called him and told him "she'd made a very big mistake and gotten in an accident" and that there had been "a car wreck." Later, Angelise told Jacob that on the night of the accident, she left the house to visit a friend. Jacob denied that Angelise ever talked to him about going to her friend's house on the night of the accident or that she asked for his permission to go. Additionally, when asked if Angelise had ever previously driven the truck that was involved in the collision, Jacob responded, "Not that I know of."

¶ 10 During her deposition, Angelise indicated she drove on the night of the collision because she wanted to see her friend. She denied that she had "ever done anything like that before." She testified that she had previously driven her father's truck "[o]n the farm once. Not off of the farm though." Angelise stated she had also driven other vehicles "[o]n the farm" and estimated that she began driving around age 11 or 12. She further estimated that she drove "[p]robably a couple times a week" but not daily. When she drove, she would be "picking people up from one

building and bringing them back to the house." Further, Angelise asserted that she never drove on public roads.

¶ 11 In January 2025, plaintiffs filed their response to Jacob's motion for summary judgment. They argued the trial court should deny the motion because a disputed issue of material fact existed regarding whether Jacob consented to Angelise's use of his vehicle "by teaching her how to drive at a very young age and allowing her to use his vehicles on a regular and consistent basis." They cited *Pelczynski v. J.W. Peters & Sons, Inc.*, 178 Ill. App. 3d 882 (1989), for the proposition that to establish a negligent entrustment claim, they were "only required to demonstrate that the defendant gave an automobile to an unfit driver, not the scope of any consent associated with the incompetent driver's possession of the vehicle."

¶ 12 Jacob filed a reply to plaintiffs' response, and, in February 2025, the trial court conducted a hearing on his motion. Ultimately, the court agreed with Jacob, granting summary judgment in his favor as to count II of plaintiffs' complaint. In setting forth its ruling, the court found the underlying case was more similar to the case authority cited by Jacob and noted that the evidence showed Angelise "never had permission to do anything close to what happened on the night of the accident." Accordingly, it concluded that the facts established "that there was no express or implied permission" given by Jacob to Angelise. The court also made a finding that its order was final and appealable under Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016).

¶ 13 This appeal followed.

¶ 14 II. ANALYSIS

¶ 15 On appeal, plaintiffs argue that the trial court erred by granting summary judgment in Jacob's favor on count II of their complaint, alleging negligent entrustment. They contend a genuine issue of material fact exists as to whether Jacob permitted Angelise to use his vehicle.

According to plaintiffs, the court failed to consider that Angelise had been allowed to have "unconstrained use of [Jacob's] vehicles for years prior to the accident" and, instead, improperly focused on the specific vehicle that Angelise was driving at the time of the collision and the scope of the consent associated with her use of Jacob's vehicles.

¶ 16 Summary judgment is appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2024).

> "In determining whether a genuine issue as to any material fact exists, a court must construe the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in favor of the opponent. A genuine issue of material fact precluding summary judgment exists where the material facts are disputed or, if the material facts are undisputed, reasonable persons might draw different inferences from the undisputed facts. Summary judgment is a drastic means of disposing of litigation and, therefore, should be granted only where the right of the moving party is clear and free from doubt." *Lewis v. Lead Industries Ass'n*, 2020 IL 124107, ¶ 15.

¶ 17 To survive a defendant's summary judgment motion, the plaintiff is not required to prove his or her case but must present a factual basis that would arguably entitle the plaintiff to a judgment. *Bruns v. City of Centralia*, 2014 IL 116998, ¶ 12. "If the plaintiff fails to establish any element of the cause of action, summary judgment for the defendant is appropriate." *Lewis*, 2020 IL 124107, ¶ 15. "In appeals from summary judgment rulings, the standard of review is *de novo*." *Id.* Additionally, this court may affirm the lower court's summary judgment ruling on any basis

supported by the record, regardless of its reasoning. *Illinois Municipal League Risk Management Ass'n v. City of Collinsville*, 2018 IL App (4th) 170015, ¶ 29.

¶ 18    To prove negligent entrustment, a plaintiff must show that the defendant gave another express or implied permission to use or possess a dangerous article or instrumentality which the defendant "knew, or should have known, would likely be used in a manner involving an unreasonable risk of harm to others." *Evans v. Shannon*, 201 Ill. 2d 424, 434 (2002). When the negligent entrustment of a vehicle is alleged, there are two primary considerations: "(1) whether the owner of the vehicle entrusted the [vehicle] to an incompetent or unfit driver, and (2) whether the incompetency was a proximate cause of a plaintiff's injury." *Id.* Further, "[i]mplied permission exists when a course of conduct or relationship between the parties includes a mutual acquiescence or lack of objection under circumstances signifying permission." *Rainey v. Pitera*, 273 Ill. App. 3d 234, 237 (1995).

¶ 19    Here, there appears to be no dispute that Jacob did not grant Angelise express permission to use his vehicle on the evening of the collision. Instead, plaintiffs' arguments suggest that they are relying on a theory of implied permission. Specifically, they contend entrustment may be established through evidence that showed Angelise had operated vehicles in connection with her family's farming operations since the age of 11 or 12. Further, like they did below, plaintiffs rely on *Pelczynski* for the proposition that "the scope of consent is not an element of proof in a negligent entrustment case."

¶ 20    In *Pelczynski*, 178 Ill. App. 3d at 884, the defendant rented a vehicle for its employee to travel between its offices in Wisconsin and a job site in Illinois. Despite being instructed by the defendant not to use the vehicle for personal use, the employee drove the vehicle outside the scope of his employment and was involved in an accident that injured the plaintiff. *Id.*

The plaintiff sued the defendant employer, alleging it had negligently entrusted a vehicle to a person it knew or should have known had a poor driving record. *Id.* The defendant moved for summary judgment, arguing that because its employee was not acting within the scope of his employment when the accident occurred, he "was acting *outside the scope of his permission* to use the car." (Emphasis added.) *Id.* The trial court granted the defendant's motion, and the plaintiff appealed. *Id.*

¶ 21 On review, the Second District reversed, finding the defendant employer was not entitled to summary judgment as a matter of law. *Id.* at 886. The court held as follows:

> "Whether [the employee] was acting within the scope of [the] defendant's consent is not an element of proof in a negligent entrustment case. The two primary considerations in a negligent entrustment case are whether the owner entrusted his car to an incompetent or unfit driver and whether that incompetency was the proximate cause of the accident that injured the third party. [Citation.] The negligent act of giving an automobile to an unfit driver, not the scope of consent, forms the basis of the tort." *Id.*

¶ 22 Notably, the issue in *Pelczynski* did not concern whether the defendant had given its employee permission to use the vehicle in question. Rather than disputing that it had granted permission to its employee, the defendant argued the plaintiff's negligent entrustment claim could not stand because the accident occurred while the employee was "acting outside the scope" of the permission that had been granted. *Id.* at 884. By contrast, the disputed issue in this case does concern the initial question of whether there was entrustment, *i.e.*, permission. As a result, the analysis in *Pelczynski* is inapplicable.

¶ 23 On appeal, Jacob cites two cases that we find are instructive and relevant to the

issues presented. First, Jacob relies on *Rainey*, 273 Ill. App. 3d at 235, where the plaintiff alleged that the defendant negligently entrusted his motorcycle to his son, who, while riding the motorcycle, was involved in an accident that injured the plaintiff. The facts showed the defendant gave his son keys to the motorcycle but established rules for its use, including that "the son had to get prior permission from [the] defendant, he had to wear a helmet, he could not use the motorcycle with a passenger on back, and he could only use the motorcycle in good weather." *Id.* at 236. "Before the accident, the son had never violated any of [the] defendant's" rules." *Id.* On the day of the accident, the defendant gave his son permission to ride the motorcycle to a skating rink and return home, which the son did. *Id.* However, later the same night, the son, "without permission, started driving the motorcycle with [the plaintiff] as a passenger" and was involved in an accident. *Id.* The defendant moved for summary judgment, arguing, in part, that there had been "no entrustment." *Id.* The trial court granted the defendant's motion, and the plaintiff appealed. *Id.*

¶ 24    The First District affirmed. *Id.* at 240. In reaching its decision, the court noted there was no dispute that the defendant did not give his son express permission to use his motorcycle. *Id.* at 237. It further held that the facts also failed to establish that there had been implied permission. *Id.* Regarding the issue of implied permission, the court stated as follows:

> "The defendant had never allowed his son to drive previously without permission. The son even called earlier on the day of the accident to obtain express permission, demonstrating that the necessity of express permission was still the standard course of conduct between the parties. No evidence exists of any previous mutual acquiescence or lack of objection, and we find the evidence is overwhelming[ly] to the contrary." *Id.*

¶ 25    The First District also held that "making keys available does not alone create

implied permission." *Id.* Further, it found *Pelczynski* was inapposite since "the existence of permission [was] at issue, not its scope." *Id.* at 239. The court stated as follows: "*Pelczynski* held, sensibly enough, that an entrustor is liable for permitting a poor driver to use the entrustor's vehicle notwithstanding any directions given to the incompetent driver. However, *Pelczynski* did not remove the requirement that the driver must obtain initial permission to establish the act of entrustment." *Id.* 238-39; see *Evans*, 201 Ill. 2d at 439 (Although the *Pelczynski* court "held that an entrustor is liable for permitting a poor driver to use the entrustor's vehicle notwithstanding any restrictive directions given to the incompetent driver," the *Rainey* court correctly observed that "the existence of permission to use the vehicle is an entirely different issue.").

¶ 26          Second, Jacob relies on *Bishop*, 250 Ill. App. 3d at 367-68, where an unlicensed 15-year-old driver struck and injured the plaintiff while driving her parents' vehicle. The plaintiff sued the minor's parents under a theory of negligent entrustment. *Id.* at 367. The trial court granted summary judgment to the defendant parents. *Id.* The undisputed facts in the case showed that the keys to the vehicle at issue were kept on an open shelf in the family's kitchen. *Id.* at 368. Additionally, although the minor may have previously started the family's vehicles to warm them up on cold mornings or moved them in the family's driveway, she had not been given permission to drive on the day of the accident and had never previously been given permission to drive a family vehicle on city streets. *Id.*

¶ 27          On review, the First District affirmed the trial court's grant of summary judgment in favor of the parents. *Id.* at 369-71. It found there was no dispute that the minor had not been given express permission to drive on the day of the accident and that no reasonable person could find that the minor had implied permission to drive. *Id.* at 369. In setting forth its ruling, the court stated as follows:

"This is not a case where [the minor] had previously been given express permission to drive the car on the streets, or where the [parents] knew she would drive and failed to object. As for [the minor's] other uses of the car, we cannot conclude that to allow an underage daughter to start the car on cold mornings or move the car in the driveway in order to wash it implies permission to drive on the streets on some later date when her parents are not home. Similarly, under the circumstances of this case, leaving car keys where a teenager can get them does not imply permission to use them." *Id.* at 369-70.

¶ 28        Again, like the First District held in *Rainey*, it is the existence of permission that is at issue in this case and not its scope. Thus, *Pelczynski* is inapposite. Additionally, similar to both *Rainey* and *Bishop*, we find that the facts of this case fail to establish implied permission. Jacob's and Angelise's deposition testimony showed Angelise had been permitted to operate vehicles or equipment on her family's farm and in connection with farming activities. However, she had never driven off the farm and on a public road. Angelise specifically denied that she had "ever done anything *** before" like what occurred on the night of the collision. As expressed in *Bishop*, this is not a case where Angelise had been previously allowed to drive Jacob's vehicles on a public road or one where Jacob knew she would drive and failed to object. Additionally, the fact that Angelise was permitted to operate vehicles and equipment on her family's farm does not establish that she had implied permission to, at a later date when her father was out of town, operate a vehicle unrelated to any farming purpose and on a public roadway.

¶ 29        Here, we find the trial court properly determined, as a matter of law, that the facts failed to establish that Jacob gave express or implied permission to Angelise to use his vehicle at the time of the collision. As a result, the court committed no error in granting Jacob's motion for

- 11 -

summary judgment as to count II of plaintiffs' complaint.

¶ 30                            III. CONCLUSION

¶ 31            For the reasons stated, we affirm the trial court's judgment.

¶ 32            Affirmed.