THE CHICAGO GENERAL RAILWAY COMPANY

*v.*

CHICAGO, BURLINGTON AND QUINCY RAILROAD CO. *et al.*

*Opinion filed October 19, 1899.*

1. STREET RAILWAYS—*company may complain of obstruction preventing running of cars.* The running of cars by a street railway is one of the uses for which streets are laid out and maintained, and a company authorized to operate such a line has the right to complain of any obstruction in the street which prevents it.

2. STREETS AND ALLEYS—*railroad company must construct sub-ways to permit passage of ordinary vehicles.* The power which a city has over its streets in the matter of compelling railroad companies to raise their tracks must be so exercised as not to interfere with the use of the streets or crossings by the persons entitled thereto; and a railroad company, under section 19 of the Railroad act, (Rev. Stat. 1874, p. 803,) requiring it to restore the street to such state as not unnecessarily to impair its usefulness, must so construct sub-ways as to permit the passage of street cars or vehicles of ordinary size.

3. INJUNCTION—*private party must sustain special irreparable damage to enjoin obstruction of street.* An individual can file a bill for injunction against the obstruction of a public highway only when it is shown that he will suffer special and irreparable damage, different in degree and kind from that suffered by the public at large.

4. SAME—*when street railway cannot enjoin construction of sub-way by railroad.* A street railway company is not entitled to enjoin the construction, by an intersecting railroad company, of sub-ways of a clear head-room of less than sixteen feet, although a lower sub-way will prevent it from operating an uncertain and indefinite portion of its cars, as the injury resulting from cutting down such cars is capable of estimation in damages at law.

5. SAME—*allegations of bill must not be uncertain with respect to the alleged injury.* An allegation in a bill filed by a street railway company to enjoin an intersecting railroad company from constructing sub-ways having less than sixteen feet of clear head-room, that otherwise the complainant will not be able to connect with suburban railways, the cars upon which are averred to be sixteen feet high, *more or less,* is uncertain and will not warrant relief.

6. SAME—*when injunction will not be granted to prevent a multiplicity of suits.* Relief by injunction cannot be granted on the ground that a multiplicity of suits will thereby be avoided, when the controversy is between two persons for themselves alone, and there are not different persons assailing the same rights.

WRIT OF ERROR to the Superior Court of Cook county; the Hon. FARLIN Q. BALL, Judge, presiding.

This is a bill for an injunction, filed by the plaintiff in error against the defendants in error, the city of Chicago and the Chicago, Burlington and Quincy Railroad Company, to enjoin the latter from erecting on Twenty-second street and Lawndale avenue in Chicago, where the right of way of said railroad company crosses and intersects said streets, any alleged obstructions, which shall create sub-ways at those points of a clear head-room of less than sixteen feet or from maintaining the same, or from interfering with the operation of all or any of the cars of plaintiff in error. A demurrer was filed to the bill, and sustained by the court below; and the bill was ordered to be dismissed for want of equity. The present writ of error is sued out for the purpose of reviewing the decree of the trial court, sustaining the demurrer and dismissing the bill.

The plaintiff in error is operating a street railway, propelling its cars by means of electricity under the trolley system on Twenty-second street and Lawndale avenue. The Chicago, Burlington and Quincy Railroad Company crosses those streets at certain points, and the cars of plaintiff in error cross the railroad crossings on those streets, made by the intersection with them of the tracks of said railroad company. By an ordinance passed on June 24, 1898, the Chicago, Burlington and Quincy Railroad Company was required to elevate its road-bed and tracks between certain points, and to construct sub-ways under its tracks in Lawndale avenue and Twenty-second street with a clear head-room of twelve and five-tenths feet, or, as is alleged in the bill, of twelve and one-half feet. The bill charges that the Chicago, Burlington and Quincy Railroad Company is proceeding to elevate its tracks and to build sub-ways in Twenty-second street and Lawndale avenue with a head-room

of only twelve and one-half feet in accordance with said ordinance of June 24, 1898. When these sub-ways are built, the cars of plaintiff in error must pass thereunder. The bill charges, in substance, that the railroad company has no right or authority to cross these streets with elevated tracks without making sub-ways at the crossings under its tracks, which shall have a clear head-room of not less than sixteen feet, instead of twelve and one-half feet. It is alleged that thereby various constitutional provisions, alleged to have a bearing upon the rights of plaintiff in error are violated.

CHARLES L. BONNEY, and GLENN E. PLUMB, for plaintiff in error.

C. M. WALKER, and S. A. LYNDE, for defendants in error.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

Lawndale avenue and Twenty-second street in Chicago are public highways. Neither the city alone, nor the city in conjunction with any railroad company, has the right to build or erect in these public highways any permanent obstruction, which shall interfere with the passage over the same of all persons and vehicles, having the right to use the public streets. The plaintiff in error operates its street cars under articles of incorporation authorized by the general railway law of the State, and under an ordinance passed by the city of Chicago, permitting it to lay its tracks in certain streets. There is nothing in the charter of the plaintiff in error, or in the ordinance giving it authority to occupy the streets, which specifies any particular kind of street cars, or the nature of the power by which such cars shall be propelled, or the size or height of the cars. The running of cars by a street railway in the streets of a city for the

transportation of passengers is one of the uses, for which streets are laid out and maintained. It is clear, therefore, that plaintiff in error would have the right to complain, if any such obstruction is placed in the public streets, upon which its tracks are laid, as will prevent the operation of its road by the running of its cars.

The ordinance, under which the railroad company is required to elevate its tracks at points where it crosses Twenty-second street and Lawndale avenue, was passed under the powers conferred upon the city of Chicago by its charter. Under its charter, the city of Chicago has the power "to lay out, establish, open, alter, widen, extend, grade, pave, or otherwise improve streets, alleys, avenues, sidewalks, wharves, parks and public grounds, and vacate the same." It also has thereunder the power to "regulate the use of the" streets, and to "prevent and remove encroachments or obstructions upon the same;" also "to provide for and change the location, grade, and crossings of any railroad;" also "to compel such railroad to raise or lower its tracks to conform to any grade, which may, at any time, be established by such city." (Rev. Stat. chap. 24, pt. 1, art. 5, sec. 1, pars. 7-10, 25, 27).

Section 19 of chapter 114 of the Revised Statutes, being the act in regard to the incorporation of railroads, provides that every corporation, formed under that act, shall have the power "to construct its railway across, along, or upon any * * * street, highway, * * * which the route of such railway shall intersect or touch; but such corporation shall restore the * * * street, highway, * * * thus intersected or touched, to its former state, or to such state as not unnecessarily to have impaired its usefulness, and keep such crossing in repair: *Provided,* * * * nothing in this act contained shall be construed to authorize * * * the construction of any railroad upon or across any street in any city * * * without the assent of the corporation of such city." (2 Starr & Curt. Stat. p. 1913).

Municipal corporations and railroad corporations both derive their powers from the State. When a railroad company constructs its railway across the street of a city, it must restore the street to such condition as not unnecessarily to impair its usefulness. If its crossing is so constructed as to prevent the passage along the street of any person or car or vehicle, which has the right to use the street, it does not restore it "to such state as not unnecessarily to impair its usefulness." So, notwithstanding the power which the city has over its streets, it must so exercise that power in the matter of compelling railroad companies to raise their tracks, as not to interfere with the use of the streets or crossings by all persons entitled thereto.

If, when the tracks of a railroad company are raised, the sub-way to be built thereunder is so low, as to prevent the passage of such vehicles as have the right to pass thereunder, there is a failure, on the part both of the railroad company and of the city, to perform the duties imposed upon them by law.

The charge made against the ordinance of June 24, 1898, is two-fold: First, that it permits the railroad company to occupy six feet of the roadway in the two streets in question with its abutments; and, second, that it authorizes the railroad company to construct a sub-way only twelve and one-half feet high, instead of a sub-way sixteen feet high. It is alleged in the bill, that the streets in question are sixty-six feet wide, and that, when the abutments, supporting the tracks of the railroad company at the crossings, are built, they will occupy such space as will make the roadway only sixty feet wide. It is not alleged in the bill, nor does it appear to be the fact, that this narrowing of the roadway will work any injury to plaintiff in error, because its tracks lie within the sixty feet of the narrowed street, and there is room enough for the passage of its cars, even if the abutments to be constructed should occupy six feet of the street.

181—39

It is well settled that, where the obstruction to a street does not result in any special damage to the individual, he has no right to complain; but the proceeding for the removal of the obstruction must be by or on behalf of the public. In such case, the public alone can complain. The individual can only file a bill for injunction against the obstruction of a public highway, when it is shown that he will suffer special damage different in degree and kind from that suffered by the public at large. (*Barrows* v. *City of Sycamore*, 150 Ill. 588; *City of Chicago* v. *Union Building Ass.* 102 id. 379). It may be, that the public, acting through the Attorney General or State's attorney, or through the city itself, might enjoin the obstruction of the streets in question by the abutments thus to be constructed, but, as it does not appear, that the plaintiff in error will suffer any special damage by reason thereof, it is not entitled to an injunction to prevent the erection of the same.

All the injuries, which are complained of in the bill, are those which are alleged to result from the building of a sub-way under the tracks at the crossings, which is less than sixteen feet high. The question then arises, whether, upon the allegations of the present bill, the plaintiff in error is entitled to an injunction against the construction of sub-ways at the points in question, which are only twelve and one-half feet high.

Obstructions to public highways are public nuisances. Courts of equity will not interpose by injunction to prevent the creation of a nuisance or purpresture, when the right is doubtful, and there is a remedy at law, and when the party asking the aid of equity shows no private injury actually sustained, or justly apprehended by him. A court of equity will not interpose to prevent the obstruction of a public highway at the instance of a private individual, merely because such obstruction is a public nuisance, but it must further appear that such obstruction will work a special injury to the individual

complaining. The injury in such case must be one, which cannot be compensated in an action at law. Where the bill to enjoin the obstruction, which is alleged to constitute a public nuisance, is filed by a private individual, it must not only be shown that he will suffer a special injury, but also that he will sustain irreparable damage. Where it does not appear that there will be irreparable damage, the relief will not be granted, even though the complainant may show a special and personal injury. (1 High on Injunctions,—3d ed.—sec. 817; *Keystone Bridge Co.* v. *Summers*, 13 W. Va. 484; *Draper* v. *Mackey*, 35 Ark. 499; Elliott on Roads and Streets, pp. 496, 497; *Green* v. *Oakes*, 17 Ill. 249). When irreparable injury is spoken of, it is not meant that the injury is beyond the possibility of repair, or beyond the possibility of compensation in damages, but it must be of such constant and frequent recurrence, that no fair or reasonable redress can be had therefor in a court of law. (2 ·Wood on Nuisances,— 3d ed.—sec. 778; Elliott on Roads and Streets, p. 497).

Where, however, the right of the public to the use of a highway is clear, and a special injury is threatened by the obstruction of the highway, and this special injury is serious, reaching the very substance and value of the plaintiff's estate, and is permanent in- its character, a court of equity will prevent the nuisance by injunction. (*Keystone Bridge Co.* v. *Summers, supra*). In *Snell* v. *Buresh*, 123 Ill. 151, we said: "While courts of equity will not interfere by injunction to prevent the obstruction of a highway or the creation of a nuisance when the right may be doubtful and there is a remedy at law, yet, as said in *Green* v. *Oakes*, 17 Ill. 249, where the right is clear, and appertains to the public, and an individual is directly and injuriously affected by the obstruction or the creation of a nuisance, they will interfere, on the application of such individual, to prevent the threatened wrong or invasion of the common right."

In the case at bar, the bill alleges that the cars in use on the tracks of the plaintiff in error "are of the height of twelve and one-half feet, thirteen feet, thirteen and one-half feet, and fourteen feet, *more or less*, respectively, and that said cars are operated by electricity by what is commonly known as the trolley system, and, in order that the said cars may be operated through and under such a sub-way, there must be at least two feet clear head-room between the roof of said cars and the said sub-way to make way for the trolley appliances, by which said cars are operated." The bill further alleges "that said head-room of twelve and one-half feet, as established by said ordinance of June 24, 1898, will absolutely prevent your orator from operating *a portion of its equipment* from its said line of road on one side of said sub-ways to the line of road of your orator on the opposite side of said sub-ways." By the use of the words, "more or less," the bill leaves it uncertain what is the exact height of the cars used by the plaintiff in error on its tracks. There is no allegation, that the cars are of any particular height, but that they are of a height which is more or less than a certain number of feet. It may as well be presumed, that the height of the cars is less than the number of feet mentioned, as that it is more than such number of feet. If it is less, it may be that the cars can easily pass under a sub-way which is only twelve and one-half feet high. The charge of the plaintiff in error is not that the sub-way in question will prevent the total and entire operation of its road, but that it will be prevented from operating "a portion of its equipment." There is nothing to indicate how large "a portion of its equipment" may be thus interfered with. The bill thus leaves it indefinite and uncertain as to the extent to which the plaintiff in error will suffer injury. Such cars of the plaintiff in error, as may be too high to pass through the sub-way, may be made lower. The cost of making such cars lower would be a matter of damage

that could be definitely ascertained, and could, therefore, be recovered in an action at law. It is not alleged in the bill, that the city of Chicago, or that the Chicago, Burlington and Quincy Railroad Company, is insolvent, or unable to respond in damages for the injury suffered. It is fair to assume from the allegations of the bill, that the greater part of the cars used by the plaintiff in error are of such height, that they can pass under the sub-way to be constructed at a height of only twelve and one-half feet. We are unable to say, from the allegations of this bill, that that portion of the public, represented by the plaintiff in error, has a clear right to use the streets in question at the points named with cars of such height that they can only pass through a sub-way sixteen feet high. Nor are we able to say, that the special injury with which plaintiff is threatened by the contemplated obstruction, will be an injury of a permanent character. The city is not obliged to make a sub-way high enough for the passage of vehicles of an extraordinary and unnecessarily great height. It is only obliged to make such a sub-way as will permit the passage of such cars, or cars of such height, as are customarily and ordinarily run upon street railway tracks.

As to the allegation, that plaintiff in error will not be able to connect with suburban railways, so as to run its cars upon the tracks of the latter, such allegation is not that the cars upon these suburban railways are sixteen feet high, but that they are sixteen feet *more or less*. In view of the great importance to the public of securing greater safety and greater freedom from accidents by the improvement to be made by the elevation of the tracks of the railroad company in question, such improvement ought not to be stopped or interfered with, where the relief prayed is expressed in such doubtful and uncertain terms, as are used in the bill in this case.

Plaintiff in error not only does not show that such injury as it may suffer will be irreparable, but it does not

show that the interference of a court of equity will be justified upon the ground that, thereby, a multiplicity of suits will be avoided. To warrant interference upon the ground of a multiplicity of suits, there must be different persons assailing the same rights, and not a mere repetition of the same trespass by the same person, the case being susceptible of compensation in damages. It is well settled, that, if the right is disputed between two persons only, not for themselves and all others in interest, but for themselves alone, the bill will be dismissed. (*Chicago Public Stock Exchange* v. *McClaughry,* 148 Ill. 372).

We are of the opinion that the court below committed no error in sustaining the demurrer to the bill. Accordingly, the decree of the superior court of Cook county is affirmed.                     *Decree affirmed.*