## C. A. Bucks et al., Appellees, v. Helen Strawn et al., Appellants.

## Gen. No. 5,760.

1. INJUNCTION, § 180*—*when bill not multifarious.* A bill by several separate owners to enjoin several defendants from conducting houses of ill fame is not multifarious where it alleges that all of the defendants have contributed to the result from which the property of all the complainants suffer.

2. INJUNCTION, § 181*—*defects in bill curable by amendment.* Where a bill for an injunction in its prayer for process asks only for a summons and not for an injunction, the defect is formal and curable by amendment.

3. INJUNCTION, § 174*—*joinder of parties*—Where several persons contribute to the creation of a nuisance they may be joined in a suit to abate the same, although each transacts his business, from which the nuisance flows, separately and without any connection with the others, and there is no joint intent or joint action; but under such circumstances it is not necessary that all persons contributing to the nuisance should be joined as defendants.

4. APPEAL AND ERROR, § 420*—*preservation of objections to pleadings.* Formal defects in bill readily curable by amendment cannot be first objected to on appeal.

Appeal from the Circuit Court of Kane county; the Hon. MAZZINI SLUSSER, Judge, presiding. Heard in this court at the April term, 1913. Affirmed. Opinion filed August 2, 1913.

ALSCHULER, PUTNAM & JAMES, for appellants; WILLIAM F. FOWLER, of counsel.

JOHN M. RAYMOND, JOHN K. NEWHALL and FRED B. SHEARER, for appellees.

MR. JUSTICE DIBELL delivered the opinion of the court.

When this suit was begun, three women, Strawn, Stecker and Atherton, each kept a house of ill fame in a residence district just outside the city limits of the city of Aurora, and another woman, Pettit, was in

active control of the house of ill fame conducted by Stecker. Six men, Bucks, Danly, Host, Werline, Brunnemeyer and Ludwig, having homes in the vicinity and owning lands in the vicinity, filed this bill against said women to enjoin them from conducting said houses of ill fame. Each defendant filed a separate demurrer to the bill. The demurrers were overruled. Each defendant elected to stand by her demurrer and a final decree was granted as prayed and the defendants appeal. They argue that the decree is erroneous, because, though the prayer for relief asked for a temporary and for a permanent injunction, the prayer for process asked only for a summons and not for an injunction. Each demurrer was general and special. This was not one of the points assigned as ground for special demurrer. The point is purely technical and formal. Story's Equity Pleadings, sec. 455, says that a general demurrer is sufficient when the bill is defective in substance, but a special demurrer is indispensable where the objection is to defects of the bill in point of form. 16 Cyc. 272, states the rule that a special demurrer particularly pointing out the cause must be resorted to to reach any formal defect or any defect readily curable by amendment. This supposed defect could have been cured by amendment, if it had been pointed out by special demurrer. It is too late to raise the question here for the first time. The bill alleged that, shortly prior to the filing of this bill, Stecker conveyed the premises to one Warner, of Wisconsin, but that Warner had never had possession and control of the premises, and that they were still maintained by Stecker. We are of opinion that Warner was not a necessary party to the relief here granted, which restrains Stecker and her assistant Pettit, but does not profess to enjoin Warner. The main argument of appellants is that each of the complainants owns property by himself and necessarily injured differently from the property of any other complainant, so that the cause of action of each is separate; and

that there is no charge of joint action by the three defendants, Strawn, Stecker and Atherton, and therefore there should have been separate suits against the three; in other words, appellants contend that to obtain the relief here granted there should have been eighteen separate bills in equity. This result is reached partly by relying upon authorities from other jurisdictions not in harmony with the rule prevailing in Illinois, and partly by failing to duly consider certain allegations of the bill.

The bill names the several lots occupied by the respective parties and makes a part thereof a plat, which is so small that in the main the lots do not appear thereon, but the portions occupied by the respective parties are indicated by their names. It therefrom appears that the premises kept by Stecker are on the southwest corner of a certain block; that the premises kept by Strawn are immediately south thereof across a street; and that the premises kept by Atherton are in the second block east of Stecker's premises; that the house of Host is directly across the street west from the Stecker premises; that the home of Werline is next north thereof; that Danly owns lots across the street west from Stecker's premises, and also lots next adjoining Stecker on two sides and also directly across the street from Strawn in two directions and directly across the street from Atherton, but that he lives on a lot several blocks further away; that Brunnemeyer lives on property across a railroad from the block in which Strawn's premises are situated; and that Bucks lives five blocks from the Strawn and Stecker houses and seven blocks from the Atherton house. The allegations as to the manner in which each of these three places are conducted are very full. Much condensed, the allegations as to Strawn are that she keeps upon premises described, owned by her, a house of ill fame and keeps thereon about ten lewd women, who there prostitute themselves with men and boys during each day of the week and each night until two

or three o'clock in the morning, and that the inmates and patrons make loud noises, use obscene and blasphemous language, within the hearing of these complainants, whose premises are located in the vicinity thereof, and conduct themselves in a drunken and riotous manner and make indecent exposures of their persons at the windows and in the yards of said premises, within view of the windows of the premises of some of the complainants; that said women conduct themselves with men on said premises of Strawn in a lewd manner, within view of the windows of a majority of the complainants; that Strawn occupies a large house with a roof painted red and at night red lights are displayed from the windows and roof thereof, and that said premises and the land in the vicinity thereof is commonly called "the red light district;" that Strawn has spent over $15,000 in fitting up buildings and grounds, and that by reason of the business so conducted by her, the streets and property in the vicinity are shunned by decent people; and that Strawn maintains a barroom on said premises and sells intoxicating liquors to the patrons thereof, without a license so to do, and operates a dance hall on said premises, and many persons visiting said resort become intoxicated there, and when departing indulge in loud talking, in indecent language, and in singing, quarreling and fighting, until the early hours of the morning, thereby depriving complainants and their families of sleep.    There are very similar allegations as to the places kept by Stecker and Atherton, including the display of red lights at night, but the amounts alleged to have been spent in fitting up the places are not the same.    The bill and decree are not dependent alone upon these allegations as to each place separately.    It is further alleged as to all said places that many persons visiting them, become drunk and disorderly and while going to and from them engage in fights and disorderly scenes at all hours of the day and night; that

at times more than fifty men and boys visit said re-
sorts in a single night and their conduct is so vile and
disorderly that decent people shun the neighborhood,
and thereby defendants depreciate the value of com-
plainants' properties and deprive them of the peace
and quiet to which they are entitled as citizens and
property owners; that each of said houses of ill fame
is conducted in a similar manner and that the conduct
and noises of the inmates and of debauched men and
boys going to and from said places are commingled
with each other, and complainants cannot ascertain
what part of the noises, lewd conduct and disturb-
ances in the neighborhood of said three resorts are
due to the patrons, inmates and habitues of any one
of said resorts, and cannot separate the nuisances, in-
jury and damage to their respective properties which
are occasioned by the presence and unlawful conduct
of each of said resorts. The bill further alleged that
a certain street car line about five hundred feet from
said resorts is the only means of railway transporta-
tion for complainants and their families between their
homes and the business part of the city of Aurora;
that the property in the vicinity of complainants and
of said resorts is chiefly adapted and used for resi-
dence purposes; that, in using said street ear line,
complainants and their families are annoyed and in-
sulted by drunken men and boys going to and from
said resorts, and that, by reason thereof, it is unsafe
for women and children to travel in the vicinity of said
resorts by day or night. The bill further alleges that
Strawn, Stecker and Atherton have been periodically
prosecuted for keeping said houses of ill fame for the
past seven years and have pleaded guilty thereto, but
such small fines have been assessed against them that
it has amounted to a licensing of such houses, and the
nuisances have flourished instead of being abated;
that by reason of the maintenance of said houses, that
neighborhood has acquired a bad reputation and the
value of complainants' property for residential pur-

poses has been destroyed and its renting and selling value has been diminished more than one-half by the maintenance of said illegal resorts; and that said resorts are a continuing source of injury and damage to the properties of complainants, and that this is an especial damage and injury, different from that suffered by the public; and that the maintenance of said houses of ill fame is a private nuisance to all the properties of the complainants and to their respective uses of the same and a great and irreparable injury thereto, and that their remedy at law is wholly inadequate; and that they could only recover nominal damages at law because the damages produced by one are mingled with the damages produced by each of the others.

It will therefore be seen that while the bill shows that each of the three owners of the three resorts named in the bill conducts her resort entirely separate from the other resorts, and there is no allegation of joint ownership or operation, yet it is alleged that they each contribute to the nuisance which is the general result of the three resorts conducted, as these are, in close proximity to each other, and that it would be impossible in an action at law against any one of them to show how much of the injury resulting to the complainants and to their comfort and in depreciation of the value of their property is caused by one of the resorts separate from the other two. The right to enjoin such a nuisance in a proper case is settled in *Hoyt v. McLaughlin*, 250 Ill. 442, and in *People v. Billburg*, 175 Ill. App. 136. It is obvious that the grievance in question is common to all the property owners who have joined in this bill. In *Baumgartner v. Bradt*, 207 Ill. 345, it is held that if the act complained of affects a common right of several persons, whose interests are in a legal point of view substantially the same, proceedings for an injunction may be instituted by some of them in behalf of others, and that in proceedings to restrain a private nuisance, if the grievance is common to several different property

owners, they may unite in one action for an injunction. In *North American Ins. Co. v. Yates,* 214 Ill. 272, it is said that considerations of convenience to the court, the avoidance of a multiplicity of suits and of unreasonable hardship to the several parties joined are to be taken into account in determining whether a bill of complaint against several defendants is multifarious, and, that although there may be several causes of action, if they grow out of the same transaction and all the defendants are involved in the same rights and the relief against each is of the same general character, the bill may be sustained. The principle which we deem applicable here was applied in *Stephens v. Collison,* 249 Ill. 225, where it is said that there is no flexible rule for determining whether a bill is multifarious or not, but that the courts exercise a sound discretion in determining whether the subject-matters and the parties, plaintiffs and defendants, are properly joined and that each case must to some extent depend on its own facts. It was there said: "In accordance with the aim of equity to administer complete relief in one suit, a bill is not multifarious so long as it seeks to enforce a single right, although that enforcement demands an investigation of several matters and relief of a complex character and consisting of different elements. The court will in a single suit investigate and determine all questions incidental to the determination of the main controversy and will grant all relief incidental to the accomplishment of the main object of the bill."

The rule applicable here is stated in 29 Cyc. 1239, as follows: "Where several persons contribute to the creation of a nuisance they may be joined in a suit to abate the same, although each transacts his business, from which the nuisance flows, separately and without any connection with the others, and there is no joint intent or joint action; but under such circumstances it is not necessary that all persons contributing to the nuisance should be joined as defendants."

It is clear that under the allegations of the bill, confessed by the demurrer, all the defendants have contributed to the result from which the property of all the complainants suffer. The fact that the complainants do not all suffer in the same degree ought not to prevent their joining in a common action to abate the nuisance and thereby to avoid a multiplicity of suits. As to Host, Werline and Danly, the injury is immediate and, even if the houses of Bucks and Brunnemeyer are so far distant from the red light district that they suffer an injury very much less in degree than the other complainants, yet we would not consider that any reason for reversing the decree. As to the sale of liquor upon the premises, the decree only enjoins its illegal sale. We find no reversible error in the decree.

The decree is therefore affirmed.

*Affirmed.*