(Nos. 93678, 93685, 93728 cons.—

STEPHEN YOUNG *et al.*, Appellees, v. BRYCO ARMS *et al.*, Appellants.

*Opinion filed November 18, 2004.*

434

Melissa Anne Maye, of Yorkville, for appellant Bryco Arms, Inc.

Robert L. Michels, of Winston & Strawn, of Chicago, and Jeffrey S. Nelson and Tina M. Schaefer, of Shook, Hardy & Bacon, L.L.P., of Kansas City, Missouri, for appellant Smith & Wesson Corporation.

Mary Kay Scott and Stephen A. Kolodziej, of Brenner, Ford & Monroe, Ltd., of Chicago, for appellant Breit & Johnson Sporting Goods, Inc.

William N. Howard, Daniel J. Voelker and Fred Foreman, of Freeborn & Peters, L.L.P., of Chicago, for appellants Chuck's Gun Shop *et al.*

Jonathan K. Baum, James C. Murray, Jr., Bradley S. Rochlen and Kathy P. Josephson, of Katten, Muchin, Zavis & Rosenman, Thomas H. Geoghegan, of Depres, Schwartz & Geoghegan, and Locke E. Bowman and Jean MacLean Snyder, all of Chicago, for appellees.

Gino L. Divito and Marnie A. Jensen, of Tabet, DiVito & Rothstein, L.L.C., of Chicago, for *amicus curiae* National Association of Manufacturers.

James M. Beck, of Dechert, L.L.P., of Philadelphia, Pennsylvania (Hugh F. Young, Jr., of Reston, Virginia, of counsel), for *amicus curiae* Product Liability Advisory Council.

Peter R. Coladarci, of Chicago, for *amicus curiae* Illinois Trial Lawyer's Association.

Gary S. Feinerman, Solicitor General, and Brett E. Legner and Laura Wunder, Assistant Attorneys General, of Chicago, for *amicus curiae* Lisa Madigan, Attorney General of the State of Illinois.

JUSTICE GARMAN delivered the opinion of the court:

The five plaintiffs in these three consolidated actions are the special administrators, as well as surviving family members, of individuals who were killed in the City of Chicago in crimes involving illegal firearms. In each case, the killer was either a minor or a young adult who had obtained the weapon from a minor. In three instances (plaintiffs Young, Smith, and Ceriale), the illegal weapons were recovered and traced to specific defendants. In the two remaining instances (plaintiffs Macias and Bowman), the guns used in the fatal shootings were never recovered. Plaintiffs' theories of liability included negligence and public nuisance.

Each plaintiff named 21 manufacturers and distributors of firearms as defendants. This group of 21 defendants included the manufacturers of the three recovered weapons and two distributors who handled one of the recovered weapons. In addition, plaintiffs Young and Ceriale named the retail gun dealers who sold the weapons used in the shootings of their sons. Plaintiff Smith named the 15-year-old gang member who shot and killed her pregnant daughter. Thus, the 24 named defendants included 8 who had been involved in the manufacture,

distribution, sale, or use of the specific guns used in the shootings of Andrew Young, Salada Smith, and Michael Ceriale, as well as 16 other manufacturers, distributors, and dealers. These 16 others are the so-called "unrelated defendants," who, plaintiffs claim, are members of a core group of irresponsible businesses that significantly contribute to the creation and maintenance of the alleged public nuisance.

The negligence counts (counts V and VI of all three complaints) were dismissed by the circuit court of Cook County and are no longer at issue. The circuit court denied defendants' various motions to dismiss the public nuisance counts, but certified for immediate interlocutory appeal (155 Ill. 2d R. 308) the question of whether the plaintiffs had stated a cause of action for public nuisance.

The appellate court held that the two plaintiffs who could not identify the defendants who manufactured, distributed, or sold the specific firearms used in the killings of their loved ones lacked standing altogether because their injury was not " 'fairly traceable' " to any named defendant. 327 Ill. App. 3d at 948, 972, quoting *Glisson v. City of Marian*, 188 Ill. 2d 211, 221 (1999). These plaintiffs, Macias and Bowman, did not seek leave to appeal.

The appellate court also held that the three plaintiffs who could identify the specific firearms used in the shootings of their decedents had stated a cause of action for public nuisance in count I of each of their complaints.[1] 327 Ill. App. 3d at 972-73. Because count I of each

---

[1]The TEC-DC9 used to kill Salada Smith, the daughter of plaintiff Obrella Smith, was manufactured by defendant Navegar, Inc., distributed by RSR Wholesale Guns, and initially sold by Perry's Trading Post, in Greenwood, Mississippi. Navegar, Inc., did not seek leave to appeal and we are informed that the company is no longer in business. Neither RSR nor Perry's Trading Post were named as defendants in Smith's complaint. As a result, the Smith

complaint was directed at only the manufacturer of an identified weapon, this holding does not apply to the distributor defendants. As a result, none of the distributor defendants are parties to this appeal.

Count II of each complaint alleged that the "unrelated defendants" participated in the creation and perpetuation of a public nuisance. The appellate court held that all five plaintiffs lacked standing to press their claims against those defendants who did not manufacture, distribute, or sell the three recovered firearms. 327 Ill. App. 3d at 972-73. Plaintiffs Young, Smith, and Ceriale did not seek leave to appeal the dismissal of their claims against the unrelated defendants.

In counts III and IV, plaintiffs, as representatives of a class of similarly situated individuals, sought to impose liability for the alleged public nuisance upon all named gun industry defendants. Count III sought damages; count IV sought injunctive relief. The appellate court did not address counts III and IV or the question of class certification. However, because the appellate court held that plaintiffs lack individual standing to press their claims against the unrelated gun industry defendants, it necessarily follows that they lack standing to sue as representatives of a class. Plaintiffs Young, Smith, and Ceriale did not seek leave to appeal the dismissal of their individual claims against the unrelated defendants. Thus, the question of class certification is moot.

Finally, the appellate court held that plaintiffs Young and Ceriale, in count VII of their complaints, had stated a claim for public nuisance against the dealer defendants who sold the guns used to kill their sons.

Pursuant to Rule 315(a) (177 Ill. 2d R. 315(a)), we granted leave to appeal to two of the manufacturer

complaint is apparently moot.

defendants, Bryco Arms, Inc.,[2] and Smith & Wesson Corporation, and two of the dealer defendants, Breit & Johnson Sporting Goods, Inc., and Chuck's Gun Shop.

We have permitted the National Association of Manufacturers and the Product Liability Advisory Council to file briefs *amici curiae* on behalf of the defendants. We have also permitted the Attorney General of the State of Illinois and the Illinois Trial Lawyers Association to file briefs *amici curiae* on behalf of the plaintiffs. 155 Ill. 2d R. 345.

## BACKGROUND

State law prohibits minors from owning firearms (720 ILCS 5/24—3 (West 2000)), and municipal ordinances generally prohibit possession of handguns within the City of Chicago. Nevertheless, numerous violent crimes are committed each year in the City of Chicago by juveniles armed with illegal weapons.

On June 10, 1996, Andrew Young, son of plaintiff Stephen Young, was shot and killed by 19-year-old Latin Kings gang member, Mario Ramos. Ramos obtained the semiautomatic 9mm Bryco 59 handgun used in the shooting from a juvenile gang member. The weapon was manufactured by defendant Bryco Arms and shipped to distributor B.L. Jennings, Inc., and then to distributor Riley's, Inc.[3] In September 1993, defendant dealer Breit & Johnson Sporting Goods, Inc., sold the gun to Mariano DiVittorio. Previously, DiVittorio had purchased over 40 guns from Breit & Johnson. Plaintiff Young asserts that Breit & Johnson had reason to know that DiVittorio was engaging in straw purchases for the benefit of Daniel Escobedo, a convicted felon with ties to the Latin Kings

---

[2]Bryco Arms' appeal has been stayed pending its bankruptcy proceedings.

[3]Distributors B.L. Jennings, Inc., and Riley's, Inc., were named as defendants in all three complaints, but are not parties to this appeal.

street gang. Escobedo then allegedly made the gun available to other Latin Kings, including at least one juvenile gang member.

Michael Ceriale, a police officer and the son of plaintiff Anthony Ceriale, was killed while conducting narcotics surveillance in Chicago. Jonathan Tolliver, the 16-year-old gang member who shot Ceriale, used a .357 Magnum revolver manufactured by defendant Smith & Wesson. This gun, after passing through the hands of a distributor, a retail dealer, and at least two owners, was purchased from a private party by Chuck's Gun Shop and later resold. Thereafter, the gun changed hands at least twice, in illegal transactions, before it was used by Tolliver to kill Michael Ceriale.

The complaints do not allege that Bryco, Smith & Wesson, Breit & Johnson, or Chuck's Gun Shop violated any applicable state or federal law or municipal ordinance governing the manufacture or sale of firearms. Rather, plaintiffs Young and Ceriale allege that these four remaining defendants have substantially contributed to the creation of a public nuisance in the City of Chicago by designing, manufacturing, marketing, and selling guns that are intended to appeal to criminals in general and to juvenile gang members in particular.

## ANALYSIS

Interlocutory appeal was taken to the appellate court pursuant Rule 308 (155 Ill. 2d R. 308). In the certified question, the appellate court was asked to determine whether plaintiffs had stated a cause of action for public nuisance. Thus, the certified question was similar in nature to a motion to dismiss under section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 2000)), which challenges the legal sufficiency of a complaint by alleging defects on its face. We review *de novo* an order granting or denying a section 2—615 motion (*Wakulich v. Mraz*, 203 Ill. 2d 223, 228 (2003)), and,

therefore, we apply the same standard of review to the appellate court's answer to the certified question in the present case.

In reviewing the sufficiency of a complaint, we accept as true all well-pleaded facts and all reasonable inferences that may be drawn from those facts. *Jarvis v. South Oak Dodge, Inc.*, 201 Ill. 2d 81, 86 (2002). In addition, we construe the allegations in the complaint in the light most favorable to the plaintiff. *Wakulich*, 203 Ill. 2d at 228. When the plaintiff's theory of liability is public nuisance, the pleading requirements are not exacting because the "concept of common law public nuisance *** elude[s] precise definition." *City of Chicago v. Festival Theatre Corp.*, 91 Ill. 2d 295, 306 (1982). The existence of a nuisance " 'depends on the peculiar facts presented by each case.' " *Donaldson v. Central Illinois Public Service Co.*, 199 Ill. 2d 63, 101 (2002), quoting *City of Chicago v. Commonwealth Edison Co.*, 24 Ill. App. 3d 624, 632 (1974). A sufficient pleading in a cause of action for public nuisance will allege a right common to the general public, the transgression of that right by the defendants, and resulting injury. *Feder v. Perry Coal Co.*, 279 Ill. App. 314, 318 (1935). Because the element of "resulting injury" requires two separate findings—actual injury and a cause creating this result—the complaint must allege four distinct elements of a public nuisance claim: the existence of a public right, defendants' substantial and unreasonable interference with that right, proximate cause, and injury.

### Standing

Section 821C of the Restatement (Second) of Torts addresses the issue of standing to bring an action for public nuisance and states that an individual, as opposed to a governmental entity, may recover damages in an action for public nuisance only if he or she has "suffered harm of a kind different from that suffered by other

members of the public exercising the right common to the general public that was the subject of interference." Restatement (Second) of Torts § 821C (1979). This statement is consistent with well-established law in Illinois. See, *e.g.*, *Chicago General Ry. Co. v. Chicago, Burlington & Quincy R.R. Co.*, 181 Ill. 605, 610 (1899) (an individual may seek an injunction against an obstruction of a public highway only when he has shown that "he will suffer special damage, different in degree and kind from that suffered by the public at large"); *McDonald v. English*, 85 Ill. 232, 236 (1877) (a plaintiff must show "special injury" to maintain an action for an obstruction to the streets).

We need not, however, determine whether the tragic personal losses suffered by plaintiffs constitute the type of special injury necessary to confer standing because we conclude that, as a matter of law, they cannot state a claim in public nuisance against these defendants.

## Public Right

As alleged in the "Allegations of Fact" portion of the Ceriale and Young complaints, defendants substantially and unreasonably interfere with the right of "the plaintiffs class to use the public spaces of the City of Chicago without undue risk of injury to themselves and to their families." As authority for the existence of such a right, plaintiffs rely on *Village of Des Plaines v. Poyer*, 123 Ill. 348, 351 (1888), in which this court stated, in *dicta*, that "the right of the people to be free from disturbance and reasonable apprehension of danger to person and property is to be respected and jealously guarded."

The issue in *Poyer*, however, was whether the village exceeded its authority by declaring public picnics and open-air dances to be nuisances *per se. Poyer*, 123 Ill. at 350. This court held that although the village was empowered by statute to declare what would be deemed

a nuisance within its borders, it did not have the power to declare a nuisance where no nuisance, in fact, existed. *Poyer*, 123 Ill. at 350. The language quoted by plaintiffs does not support their claim of a public right because, if every sort of conduct that caused a public disturbance or the reasonable apprehension of danger to person or property were to be considered a nuisance, the law of nuisance would swallow the entire law of torts and most of the criminal law.

Defendant Breit & Johnson suggests that the public right claimed by plaintiffs is merely a generalized assertion of the individual right not to be assaulted. See, *e.g.*, Restatement (Second) of Torts § 821B, Comment *g* (1979) (a public right is "not like the individual right that everyone has not to be assaulted"). Breit & Johnson argues, further, that even if such a public right were to be recognized, plaintiffs are not seeking redress for a violation of the public right. Rather, as evinced by their prayers for relief seeking damages pursuant to the Wrongful Death Act (740 ILCS 180/1 *et seq.* (West 1998)), they seek a remedy in tort for injuries to specific individuals.

In *City of Chicago v. Beretta U.S.A. Corp.*, 213 Ill. 2d 351 (2004), we expressed reservations regarding the existence of a public right to use the public space without undue risk of injury. Although we continue to doubt the wisdom of recognizing such a broad and ill-defined public right, we assume without deciding that plaintiffs have properly pleaded the existence of a public right that is affected by the alleged nuisance and turn to our consideration of the elements of unreasonable interference and proximate cause.

### Unreasonable Interference

We held in *City of Chicago* that when a commercial enterprise is highly regulated by state or federal law, the operators of the enterprise may not be held liable in

public nuisance for a resulting interference with a public right unless: (1) the defendant's conduct is not in compliance with the law; (2) the defendant was otherwise negligent; or (3) the law permitting the conduct is itself invalid for allowing a nuisance. *City of Chicago*, 213 Ill. 2d at 389, citing *Gilmore v. Stanmar, Inc.*, 261 Ill. App. 3d 651, 661 (1994). In addition, it is implicit in our adoption of the *Gilmore* rule that intentional conduct, if nonnegligent and allowed by the statutes and regulations governing a highly regulated industry, cannot give rise to liability for public nuisance.

Both the manufacturer and dealer defendants are engaged in businesses that are highly regulated by state and federal law. See, *e.g.*, 18 U.S.C. § 921 *et seq.* (2000) (Gun Control Act); 430 ILCS 65/0.01 *et seq.* (West 2002) (Firearm Owners Identification Card Act). Plaintiffs have not alleged that any defendant has violated an applicable statute or ordinance governing the manufacture or sale of firearms or that the laws permitting defendants to engage in the businesses of manufacturing or selling firearms are themselves invalid. Plaintiffs do allege that defendants have intentionally engaged in conduct designed to increase their sales of certain types of firearms that, while legal, are particularly appealing to the criminal element. As noted above, such intentional conduct cannot be the basis for public nuisance liability in this case. Thus, the viability of plaintiffs' nuisance claims depends on whether plaintiffs have properly pleaded that defendants are "otherwise negligent" in the conduct of their businesses. *City of Chicago*, 213 Ill. 2d at 389, citing *Gilmore*, 261 Ill. App. 3d at 661.

A claim based on negligence, whether the theory of liability is nuisance, malpractice, or any other species of tort, may not lie in the absence of a duty owed by the defendant. *Washington v. City of Chicago*, 188 Ill. 2d 235, 239 (1999). According to the complaints, defendants' duty

arises from section 24—3 of the Criminal Code of 1961 (720 ILCS 5/24—3 (West 1998)), which makes it a felony to sell or give a handgun to a minor, and from certain provisions of the Chicago municipal code, which generally forbid the possession and use of firearms in the city. The complaints do not describe the nature of the claimed duty, its scope, or precisely to whom it is owed.

If the claimed duty is merely the duty to follow the law, plaintiffs' claim must fail under the *Gilmore* rule because, as noted above, plaintiffs do not allege that defendants have violated section 24—3 of the Criminal Code. With regard to the municipal ordinances, plaintiffs offer no authority for imposing a duty arising from the existence of a municipal ordinance on parties doing business outside the municipality. If the mere enactment of a municipal ordinance were to give rise to a duty on those outside the municipality, there would be no end to liability.

The complaints, however, allege that these defendants have a duty to go beyond mere compliance with applicable law. The claimed duty appears to be a duty to implement business practices designed to minimize the risk of the type of harm that the statutes and municipal code provisions were designed to address. In essence, plaintiffs' claim is that because section 24—3 and the municipal code are ineffective in keeping handguns away from juveniles in the city, these defendants must have breached a duty owed to the residents of the city.

Because the briefs and arguments of the parties focus almost entirely on the element of proximate cause and direct so little attention to the question of duty, we decline to resolve this case on this basis. We note, however, that in *City of Chicago* we held that the manufacturer and distributor defendants owed no duty to the plaintiff city or its residents to prevent the illegal possession and use of their products within the city. *City*

*of Chicago*, 213 Ill. 2d at 393. Our judgment is not altered by the present plaintiffs' reliance on section 24—3 of the Criminal Code and the municipal code of the City of Chicago as the source of such a duty.

## Proximate Cause

The term "proximate cause" encompasses two distinct requirements: cause in fact and legal cause. *Lee v. Chicago Transit Authority*, 152 Ill. 2d 432, 455 (1992). The first requirement, cause in fact, is present "when there is a reasonable certainty that a defendant's acts caused the injury or damage." *Lee*, 152 Ill. 2d at 455. In deciding this question, we first ask whether the injury would have occurred absent the defendant's conduct. *Lee*, 152 Ill. 2d at 455. In addition, when, as here, there are multiple factors that may have combined to cause the injury, we ask whether defendant's conduct was a material element and a substantial factor in bringing about the injury. *Lee*, 152 Ill. 2d at 455.

The second requirement, legal cause, is established only if the defendant's conduct is " 'so closely tied to the plaintiff's injury that he should be held legally responsible for it.' " *Simmons v. Garces*, 198 Ill. 2d 541, 558 (2002), quoting *McCraw v. Cegielski*, 287 Ill. App. 3d 871, 873 (1996). The question is one of public policy—How far should a defendant's legal responsibility extend for conduct that did, in fact, cause the harm? *Simmons*, 198 Ill. 2d at 558. See W. Keeton, Prosser & Keeton on Torts § 41, at 264 (5th ed. 1984) ("As a practical matter, legal responsibility must be limited to those causes which are so closely connected with the result and of such significance that the law is justified in imposing liability. Some boundary must be set to liability for the consequences of any act, upon the basis of some social idea of justice or policy"). The proper inquiry regarding legal cause involves an assessment of foreseeability, in which we ask whether the injury is of a type that a reasonable person

would see as a likely result of his conduct. *Lee*, 152 Ill. 2d at 456.

Although proximate cause is generally a question of fact (*Lee*, 152 Ill. 2d at 455), the lack of proximate cause may be determined by the court as a matter of law where the facts alleged do not sufficiently demonstrate both cause in fact and legal cause (*Harrison v. Hardin County Community Unit School District No. 1*, 197 Ill. 2d 466, 476 (2001)).

With regard to the element of proximate cause, the appellate court concluded that "a reasonable trier of fact could find that the criminal misuse of guns killing persons were occurrences that defendants know would result or were substantially certain to result from the defendants' alleged conduct." 327 Ill. App. 3d at 970. In reaching this conclusion, the appellate court relied on a comment accompanying section 824 of the Restatement and rejected defendants' reliance on *Martin v. Harrington & Richardson, Inc.*, 743 F.2d 1200, 1205 (7th Cir. 1984) (concluding that Illinois would likely "follow the weight of authority," which holds that criminal misuse of a handgun is "not a foreseeable consequence of gun manufacturing").

Because the existence of cause in fact is a question of fact for the jury, we agree with the appellate court that, in the present case, a reasonable jury could find that the manufacture of a certain .357 Magnum by Smith & Wesson, its subsequent sale by Chuck's Gun Shop, along with at least three transfers of ownership in between and one or more transfers after were causes in fact of the shooting of Michael Ceriale. That is, if the gun had never been made, or if any of the intervening possessors of the gun had destroyed it, it would not have been used by a 16-year-old gang member to murder a police officer. The

same can be said of the Bryco 59 that killed Andrew Young.[4]

We acknowledge the point raised by defendant Breit & Johnson that the killers of these two young adults would likely have obtained other guns if these particular weapons had not been available to them, but conclude that this observation is more relevant to the legal cause inquiry than to the cause in fact inquiry.

As for the question of legal cause, the appellate court's reliance on section 824 of the Restatement, and comment *b* thereto, is misplaced. This section does not address the element of proximate cause. Instead, it deals with the type of conduct essential to liability for public or private nuisance. An actor will be held liable for a nuisance if his conduct consists of: "(a) an act; or (b) a failure to act under circumstances in which the actor is under a duty to take positive action to prevent or abate the interference" that constitutes the nuisance. Restatement (Second) of Torts § 824 (1979). In the "ordinary case," comment *b* instructs, liability for nuisance "arises because one person's acts set in motion a force or chain of events resulting in the invasion." Restatement (Second) of Torts § 824, Comment *b* (1979). Further, "[s]o far as the actor's liability is concerned, it is immaterial whether he does the acts solely in the pursuit of his own interests or whether he is acting for another, gratuitously, under contract or as the other's servant or agent. It is enough that his acts are *a legal cause of the invasion*." (Emphasis added.) Restatement (Second) of Torts § 824, Comment *b* (1979).

Thus, section 824 and comment *b* do not provide the

---

[4]With regard to the Bryco 59, only the dealer, Breit & Johnson, is a party to this appeal. The appeal of the manufacturer, Bryco Arms, has been held pursuant to a bankruptcy stay. The two distributors were not named as defendants in the public nuisance counts of the Young complaint.

answer to the question of whether the alleged conduct of defendants constitutes a legal cause of the claimed nuisance. Rather, comment *b* merely poses the question—Is the conduct of these defendants a legal cause of the alleged interference with a public right? The answer to this question must be found elsewhere.

The appellate court properly stated the relevant rule regarding the question of legal cause in the subset of cases involving injuries that are caused directly by the intervening acts of third parties:

> "In the special case where plaintiff's injuries result not from defendant's direct actions, but from the subsequent, independent act of a third person, the issue of legal causation becomes the following: whether the intervening cause is of the type that a reasonable person would see as a likely result of his conduct." 327 Ill. App. 3d at 970, citing *First Springfield Bank & Trust v. Galman*, 188 Ill. 2d 252, 258 (1999).

In *Galman*, however, we further explained that if the defendant's conduct merely furnishes a condition by which injury is made possible, and a third person, acting independently, subsequently causes the injury, the defendant's creation of the condition is not a proximate cause of the injury. *Galman*, 188 Ill. 2d at 257-58. More recently, in *Abrams v. City of Chicago*, 211 Ill. 2d 251, 259 (2004), we reiterated that the condition-versus-cause analysis applies to cases in which injury is caused by the intervening acts of third parties.

Defendants argue that their lawful manufacture and sale of nondefective handguns is not the legal cause of any resulting harm, either wrongful death or public nuisance, brought about by the independent, intervening, criminal acts of third parties over whom they have no control. Instead, they assert, their conduct merely furnished a condition that made the injuries possible, citing *Galman*, 188 Ill. 2d at 257. Cases cited in support of this position include: *Hartnett v. Boston Store of Chicago*,

265 Ill. 331 (1914) (store's sale of rifle and cartridges to minor, although illegal, was not the proximate cause of his negligent injury of the plaintiff because the store's negligence merely furnished a condition that made the injury possible); *Riordan v. International Armament Corp.*, 132 Ill. App. 3d 642 (1985) (manufacturers and distributors of guns used in fatal shootings were not liable for wrongful deaths of victims because they owed no duty to the victims of crimes committed by third parties); *Linton v. Smith & Wesson*, 127 Ill. App. 3d 676 (1984) (manufacturer of firearm owed no duty to plaintiff who was shot by third party); *Martin v. Harrington & Richardson, Inc.*, 743 F.2d 1200 (noting, in products liability case, that every Illinois court considering the issue has determined that the criminal misuse of firearms is not reasonably foreseeable to the manufacturer).

Plaintiffs accurately point out that these cases come from negligence and products liability law, not from the law of nuisance. *Riordan* and *Linton*, in particular, are not helpful in our legal-cause inquiry, because both cases were decided on the threshold issue of duty.

Plaintiffs offer numerous cases, dating from 1832 to 1963, in which defendants have been held liable for a public nuisance created by the criminal or disorderly conduct of third parties, only one of which, *Bucks v. Strawn*, 182 Ill. App. 644 (1913), was decided by an Illinois court. The plaintiffs in *Bucks* were residents of the neighborhood surrounding several houses of "ill fame" who sought injunctive relief to abate the nuisance caused by unruly patrons. The patrons made loud noises, used obscene and blasphemous language, and generally conducted themselves in a lewd and riotous manner, even making "indecent exposures of their persons" at the windows of the establishments. *Bucks*, 182 Ill. App. 644. The requested relief was granted.

*Bucks* and the other ancient cases cited by plaintiffs

offer little support for their claim that defendants' conduct should be deemed a legal cause of a public nuisance created by the subsequent, independent, criminal acts of third parties. In *Bucks*, and in each of the other cited cases, the criminal or disorderly conduct at issue was inextricably tied to the defendant's use of land in a manner that unreasonably interfered with the neighboring plaintiff's use and enjoyment of their own property. See, *e.g., Taylor v. Adams*, 155 So. 2d 595 (Ala. 1963) (unruly tavern); *Barrett v. Lopez*, 57 N.M. 697, 262 P.2d 981 (1953) (drunk and disorderly conduct by patrons of dance hall). These cases merely represent the traditional application of nuisance doctrine in the context of disputes between neighbors and are not relevant to the present case in which plaintiffs do not claim that these defendants have encouraged or allowed patrons to engage in criminal conduct on their premises, or when entering and exiting their premises.

In contrast, plaintiffs' theory of legal cause would permit the imposition of public nuisance liability upon the proprietor of a tavern not only for the unruly conduct of patrons on the premises, but also for harm caused by the illegal conduct of patrons after they leave. As long as the patrons' consumption of alcohol were shown to be a cause in fact of injury, the serving or selling of alcohol would be deemed the legal cause, even though the patrons have committed crimes. A tavern owner could be liable for the creation of a public nuisance if it were shown that his patrons caused traffic accidents by driving under the influence, damaged property by driving on lawns or crashing into garbage cans, or committed criminal assaults while intoxicated. We reject such an expansive view of legal cause.

We also note, parenthetically, that *Bucks* is a decision of the appellate court that predates the 1935 amendment of the Courts Act, which, for the first time, established

that decisions of the appellate court were binding authority upon the lower courts. See *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 95 (1996); *Chicago Title & Trust Co. v. Vance*, 175 Ill. App. 3d 600, 606 (1988). As such, *Bucks* is of purely historical interest.

However,

"A public nuisance, unlike a private nuisance, does not necessarily involve an interference with the use and enjoyment of land, or an invasion of another's interest in the private use and enjoyment of land, but encompasses any unreasonable interference with a right common to the general public. Thus, an action for public nuisance may lie even though neither the plaintiff nor the defendant acts in the exercise of private property rights." 58 Am. Jur. 2d Nuisances § 31, at 592 (2002).

Thus, although the cases cited by plaintiffs do not support their theory, their claim is not foreclosed simply because it is not predicated on defendants' use of land. See *City of Chicago*, 213 Ill. 2d at 366-67.

Defendants respond that even if liability for public nuisance may be imposed in the absence of an interference with the use and enjoyment of land, they still may not be held liable for the criminal acts of third parties. They invoke a "long-standing rule of Illinois law that civil liability for the criminal acts of third parties will not be imposed unless there is a special relationship" between the parties.

This court has, indeed, recognized such a rule. See, e.g., *Estate of Johnson v. Condell Memorial Hospital*, 119 Ill. 2d 496, 503 (1988) (stating that, in general, one has no duty to control the conduct of another to prevent him from causing harm to a third party, absent a special relationship with either the person causing the harm or the injured party). See also Restatement (Second) of Torts §§ 315 through 321 (1965) (duty to control conduct of third persons). The existence of a special relationship, however, goes to the question of duty, not to proximate cause.

Turning, then, to the question of proximate cause, legal cause will be found if reasonable persons in the businesses of manufacturing and selling firearms would have seen the creation of a public nuisance in the City of Chicago as a likely result of their conduct. *City of Chicago*, 213 Ill. 2d at 408, citing *Galman*, 188 Ill. 2d at 259. However, legal cause will not be found where the criminal acts of third parties have broken the causal connection and the resulting nuisance " 'is such as in the exercise of reasonable diligence would not be anticipated and the third person is not under the control of the one guilty of the original wrong.' " *City of Chicago*, 213 Ill. 2d at 408, quoting *Merlo v. Public Service Co. of Northern Illinois*, 381 Ill. 300, 317 (1942).

Even if defendants are guilty of an "original wrong," that is, a breach of duty, it is clear that the gun-wielding killers of Young and Ceriale were not under defendants' control. Thus, the question of legal cause is entirely one of foreseeability—Is the creation of a public nuisance in the City of Chicago so clearly foreseeable that the business practices of these defendants should be deemed a legal cause of the nuisance, even though it results from the cumulative effect of numerous criminal acts by many third parties? See *City of Chicago*, 213 Ill. 2d at 408.

We conclude not. In *City of Chicago*, we noted that we had found no reported cases in which a nuisance claim was dismissed at the pleading stage based on lack of legal cause. However, we found the case of *Watson v. Enterprise Leasing Co.*, 325 Ill. App. 3d 914 (2001), in which the theory of liability was negligent entrustment, to be instructive. *City of Chicago*, 213 Ill. 2d at 411-12. The defendant was a merchant who leased a vehicle to one party with the knowledge that it was likely to be driven by one or more third parties. The lessor entrusted the vehicle to a friend, from whom it was taken by a third person. Eventually, a fourth person—an intoxicated

minor—took the keys and caused an accident that killed his passenger. *Watson*, 325 Ill. App. 3d at 917-20. Affirming the trial court's grant of summary judgment for the defendant, the appellate court noted that the element of cause in fact had been satisfied. Absent the leasing of a car to the first individual, the death would not have occurred—at least not in an accident involving this particular vehicle. *Watson*, 325 Ill. App. 3d at 924. The intoxicated driver would either not have driven at all and there would have been no accident, or he would have obtained the keys to another vehicle and the accident would have occurred, but would not have involved the defendant's vehicle. Thus, the appellate court concluded, the "crux of the issue" was "legal cause, which revolves around foreseeability." *Watson*, 325 Ill. App. 3d at 924. The driver who caused the fatal injury, the court noted, was at least two steps removed from the person to whom Enterprise directly entrusted the car. In addition, the accident was caused by the criminal act of a third party. These events were not reasonably foreseeable. *Watson*, 325 Ill. App. 3d at 925. Although the defendant furnished a condition that made the resulting injury possible, the creation of this condition was not the legal cause of the fatal accident because the defendant's conduct was too remote to constitute legal cause. *Watson*, 325 Ill. App. 3d at 925. As the appellate court observed, to "impose foresight on defendant under the particular circumstances present in this case would render it liable for anyone who drove the car, thus making it strictly liable." *Watson*, 325 Ill. App. 3d at 925.

The parallels to the present cases are clear. As we noted in *City of Chicago*, the defendants, like the car rental company in *Watson*, are in the business of providing a lawful product that may be used unlawfully, causing injury or death. In addition, both the possession and use of firearms and the driving of motor vehicles are

highly regulated by law. *City of Chicago*, 213 Ill. 2d at 412. Further, the person whose criminal conduct directly caused the injury in *Watson* was several steps removed from the defendant. Similarly, the Smith & Wesson .357 Magnum used to kill Michael Ceriale passed through at least eight sets of hands before it reached Tolliver. The Bryco 59 used to kill Stephen Young passed through at least six sets of hands before reaching Ramos. Finally, the appellate court in *Watson* found it unreasonable to expect a car rental company to foresee a single accident caused by an intoxicated teenage driver who took car keys without permission. We conclude that it is equally unreasonable to expect defendants to foresee that the aggregate effect of the lawful manufacture and sale of firearms will be the creation of a public nuisance in a distant city. Therefore, defendants' business practices merely create a condition that makes the eventual harm possible. As such, defendants' conduct cannot constitute a legal cause of the alleged nuisance.

Ultimately, our conclusion that the doctrine of public nuisance does not encompass the novel claim made by plaintiffs is a public policy determination. See W. Keeton, Prosser & Keeton on Torts § 41, at 264 (5th ed. 1984) (proximate cause is merely a boundary used to set liability for the consequences of any act and is based upon "some social idea of justice or policy"). We note that despite the existence of numerous statutes declaring various practices and conditions to constitute public nuisances, we have no indication from the legislature that it would be inclined to impose public nuisance liability for the manufacture and sale of a product that may be possessed legally by some persons, in some parts of the state. We are reluctant to interfere in the lawmaking process in the manner suggested by plaintiffs, especially when the product at issue is already so heavily regulated by both the state and federal governments. We, therefore,

conclude that there are strong public policy reasons to defer to the legislature in the matter of regulating the manufacture, distribution, and sale of firearms. See *Charles v. Seigfried*, 165 Ill. 2d 482, 493 (1995) (declining to recognize a cause of action in negligence against social hosts who serve alcohol to minors on the basis that the "primary expression of Illinois public and social policy should emanate from the legislature"); *Vitro v. Mihelcic*, 209 Ill. 2d 76, 90 (2004) (boundary setting on the limits of tort liability is "often *** more appropriately left to the legislative branch").

## CONCLUSION

In sum, we hold that plaintiffs' public nuisance claims against both the manufacturer and the dealer defendants must be dismissed. Even granting, *arguendo*, that plaintiffs can establish that a public right has been infringed upon by defendants' conduct, their allegations of negligence are not supported by any recognized duty and we have declined their invitation to recognize such a duty. Further, their allegations of intentional conduct are an insufficient basis for public nuisance liability as a matter of law. *City of Chicago*, 213 Ill. 2d at 432. Finally, the defendants' conduct is not a legal cause of the alleged nuisance because the claimed harm is the aggregate result of numerous unforeseeable intervening criminal acts by third parties not under defendants' control.

We, therefore, reverse the judgment of the appellate court, which answered the certified question in the affirmative. We remand to the circuit court with instructions to grant defendants' motions to dismiss for failure to state a cause of action.

*Appellate court judgment reversed;*
*remanded with instructions.*

JUSTICE FREEMAN, specially concurring:
The majority's recitation of the facts and its discus-

sion of the current state of the law with respect to the issues raised are both comprehensive and accurate. The conclusion reached is legally correct, and I am compelled to join in it. However, some of the more disturbing allegations in plaintiffs' complaint are not highlighted in the majority opinion because they do not impact the majority's legal analysis. I write separately to call attention to these contentions.

According to plaintiffs' complaint, the Chicago police department recovered an average of approximately 17,000 illegal handguns in the City of Chicago in *each* of the years 1994 to 1997. In each of the years 1996 to 1998, more than 500 firearm-related fatalities were recorded within the city limits. More than 10% of the victims were under the age of 17.

These facts are both alarming and saddening but, as defendants argue, they are the results of the actions of third parties unrelated to defendants. However, plaintiffs' additional allegations about defendants' conduct, if true, suggest that defendants were not only aware that their products were used by third parties for criminal acts, but that defendants affirmatively sought to increase their profit by pandering to that market. For example, plaintiffs state that defendants oversaturated markets near Chicago, supplying guns in nearby suburbs far in excess of the number that the citizens of those suburbs would ordinarily be expected to purchase. Plaintiffs also contend that defendant gun manufacturers have not placed restrictions or limits, let alone oversight, on their distributors and dealers—as opposed to manufacturers of other potentially dangerous products such as chemicals and even paints—in order to remain willfully ignorant of the process by which their products are farmed out into the communities of Illinois. Plaintiffs also argue that the manufacturers have included features on some weapons to make them more attractive to the criminal element.

They offer as an example the small, easily concealed nature of the Bryco "59" semiautomatic handgun, and also note the *fingerprint-resistant coating* on the Navegar "TEC-DC9."

I do not believe that all gun manufacturers should be insurers or guarantors of the conduct of the users of their product. However, I do believe that it is disingenuous to place all manufacturers on equal footing, in light of the allegations of oversaturation of markets, failure to institute even minimal oversight of the distribution network, and deliberate inclusion of features designed to make specific products more attractive for criminal use. It is, of course, impossible for a manufacturer, distributor, or even, in most cases, a dealer to know that a *particular* gun will be used in a crime. But plaintiffs' allegations, if true, support the conclusion that defendant gun manufacturers are not only aware of the probability that their wares might be used in the commission of crimes, but that they actively seek to exploit that fact to increase their profit margin.

Notwithstanding the above, I recognize that it would be an enormous expansion of the doctrine of public nuisance if this court were to apply the doctrine to these defendants. Other jurisdictions have reached different conclusions with respect to this question. Nevertheless, the large number of policy considerations which must be weighed on this topic lead me to conclude that it is a matter best left for legislative, as opposed to judicial, action. Given the disturbing statistical data that I noted at the outset of this separate opinion, it is my sincere hope that our General Assembly will turn its attention to the problems this case brings to light.

CHIEF JUSTICE McMORROW and JUSTICES FITZGERALD, KILBRIDE and RARICK join in this special concurrence.